## MINNESOTA *v.* FIRST NATIONAL BANK OF ST. PAUL.

### CERTIORARI TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 245.   Argued December 13, 1926.—Decided March 21, 1927.

1. The taxation of national bank shares, authorized by Rev. Stats. § 5219, is against the holders of the shares and is to be measured by the value of the shares, and not by the assets of the bank without deducting its liabilities. P. 564.

2. A tax on national bank shares at a greater rate than that imposed on competing credits in the hands of individuals can not be sustained upon the ground that the discrimination is removed in practice by deducting liabilities of the bank from its assets in valuing its shares, while allowing no deduction of their liabilities to individuals in valuing their credits. P. 564.

3. The shares of corporations employing capital in the note brokerage business or in buying and selling securities are "moneyed capital in the hands of individual citizens" (R. S. § 5219), i. e., the individuals holding the shares. P. 566.

4. The competition guarded against by § 5219 may arise from the employment of capital invested in a business, even though the competition be with some but not all phases of the business of national banks, or it may arise from the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks. P. 566.

5. The evidence sustains a finding by the state court that moneyed capital in the hands of individuals was in competition with the business of national banks, including the plaintiff. P. 567.

6. Surplus capital of individuals seeking investment and reinvestment in bonds, mortgages, and other evidences of indebtedness, in competition with the capital of national banks, is moneyed capital coming into competition with the business of national banks, within the meaning of Rev. Stats. § 5219. P. 568.

164 Minn. 550, affirmed.

CERTIORARI (269 U. S. 550) to a judgment of the Supreme Court of Minnesota which affirmed a judgment for the bank in an action brought against it by the State to recover taxes assessed against its shareholders.

*Mr. Patrick J. Ryan,* with whom *Messrs. Clifford L. Hilton,* Attorney General of Minnesota, *G. A. Youngquist,* Assistant Attorney General, *Harry H. Peterson,* and *Roy A. MacDonald* were on the brief, for petitioner.

*Mr. Thomas D. O'Brien,* with whom *Messrs. Alexander E. Horn* and *Edward S. Stringer* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The State of Minnesota, the petitioner, brought suit in the district court of Ramsey County, Minnesota, to recover from the First National Bank of St. Paul, the respondent, taxes assessed against its shareholders for the years 1921 and 1922. Respondent resisted the payment of the tax on the ground that the assessment was at a higher rate than that on moneyed capital employed in competition with national banks and hence prohibited by § 5219 of the Revised Statutes of the United States. The trial court gave judgment for petitioner. On appeal judgment was reversed by the Supreme Court of Minnesota and a new trial ordered. 164 Minn. 235. Upon the second trial, had upon the record of the first, the district court held that at the time of the assessment of the taxes in question "a substantial and relatively material portion of the money and credits so listed and assessed in said

Ramsey County consisted of moneyed capital in the hands of individual citizens of said county, coming into competition with the business of national banks in said county, and with the business of said defendant." Judgment in respondent's favor was affirmed by the Supreme Court of Minnesota, 164 Minn. 251. This Court granted certiorari. 269 U. S. 550; Jud. Code, § 237 (b).

The questions raised are similar to those considered in *First National Bank of Hartford* v. *City of Hartford, ante,* p. 548, and may be disposed of by the application to the present facts of the principles there considered.

Under the Minnesota statutes, shares of national banks and the moneyed capital of banks or mortgage loan companies organized under the laws of the state are assessed and taxed at forty per cent. of their full value in the district where located. Gen. Stat. 1923, § 2023; Laws of 1921, c. 416. Money and credits are taxed at the rate of three mills on the dollar of their full cash value and are exempt from all other taxation. Gen. Stat. 1913, § 2316; Laws of 1911, c. 285. Mortgages upon real estate and executory contracts for the sale of real estate are separately taxed at a lower rate; 15 cents per one hundred dollars where the period to run is for five years or less, and 25 cents per one hundred dollars on mortgages and contracts for a longer period. Gen. Stat. 1913, § 2301, *et seq.;* Laws of 1921, c. 445. Money is defined as gold and silver coin, all forms of currency, and all deposits subject to withdrawal on demand. Credits include every demand for money or other valuable thing. Gen. Stat. 1923, § 1980; Laws of 1917, c. 130. Under these statutes money and credits, as defined, are taxed at the three-mill rate and mortgages on real estate at a lesser rate.

It appears that the tax assessed upon the shares of respondent was sixty-seven mills in 1921 and sixty-one and one-half mills in 1922. Although based upon a forty per cent. valuation, the actual rate upon the shares was

higher than the prescribed tax of three mills per dollar of full valuation of money and credits and therefore was discriminatory. Petitioner argues that in its actual operation, the tax on national bank shares is no greater than the tax on credits, since under the statute individuals are taxed at the rate of three mills upon the full value of their credits without deducting their liabilities, whereas in taxing bank shares, the liabilities of the banks are deducted from their assets in ascertaining the forty per cent. valuation of their shares. Therefore, it is urged, if bank shares were taxed at the same rate without deducting the bank's liabilities in ascertaining the value of their shares, the amount of the tax would be approximately the same. This argument ignores the fact that the tax authorized by § 5219 is against the holders of the bank shares and is measured by the value of the shares, and not by the assets of the bank without deduction of its liabilities, *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, and that the bank share tax must be compared with the tax assessed on competing moneyed capital of individuals invested in credits, or the tax on capital invested by individuals in the shares of corporations whose business competes with that of national banks. *Mercantile Bank* v. *New York,* 121 U. S. 138, 156, 157; *First National Bank* v. *Anderson,* 269 U. S. 341, 348. Thus compared, the actual tax imposed upon the shares of respondent, like the tax imposed upon credits in the hands of individuals, is assessed without deducting the liabilities of their individual owners, but at different rates. This discrimination is prohibited by § 5219 if moneyed capital in the hands of individuals in Minnesota is employed in substantial competition with national banks within the state.

The evidence shows that there were money and credits listed for taxation in the entire state during each of the years in question in excess of $400,000,000, exclusive of municipal bonds and recorded real estate mortgages, and

in Ramsey County alone, where respondent conducts its banking business, there were like money and credits in excess of $83,000,000, all of which were subject to the three-mill tax. The evidence shows that in Ramsey County there were listed for taxation for 1921 in the hands of individuals, promissory notes amounting to $2,481,446, and bonds, exclusive of tax exempt bonds and real estate mortgages to $7,595,975; for 1922, notes to $1,648,810, bonds to $9,931,955. There was invested in those years in real estate mortgages in Minnesota over $185,000,000 annually. The investment of national banks in Minnesota in those years in real estate mortgages was in excess of $19,000,000; in United States government bonds in excess of $41,000,000, and in other securities $33,800,000. The share value of national banks in Minnesota in those years, not including real estate, was a little more than $60,000,000, and less than two-thirds of their total investment in the securities mentioned.

Note brokers within the state in those years made loans to their customers upon paper which they sell to banks and other investors, amounting to as much as $100,000,000 annually. Much of this paper is sold outside of the state, but the amount sold to banks and to individuals within the state is substantial. One class of this paper known as " cattle loan paper " exceeded $22,000,000 annually in the years in question, and of this $13,000,000 was sold to banks, corporations, firms and individuals in Minnesota. The amount shown to have been sold to individuals approximated $1,000,000. Eleven business concerns to whom respondent made loans, borrowed from their own officers and employers in one of the years in question about $1,500,000.

Individuals and corporations using substantial capital are engaged within the state in business as investment houses, dealing in bonds and mortgages, such as normally enter into the business of banking. Two such corpora-

tions in Ramsey County had a capital aggregating $2,250,-
000. One of them sold $13,000,000 of bonds in Minnesota
in 1922, and had sold prior to May 1, 1921, mortgages which
were still outstanding aggregating more than $25,000,000.

Taken as a whole, the evidence tends to show without
material contradiction that there is a large amount of
moneyed capital in the state employed in normal banking
activities such as loans, purchases and sale of notes, bonds
and real estate mortgages, and that large amounts of capi-
tal are invested and reinvested in such securities by indi-
vidual investors within the state.

But petitioner asserts that it does not appear from the
record whether those engaged in the business of note
brokers or in the business of acquiring and selling securi-
ties are individuals or corporations, and the amount of
capital employed by any of them is not indicated. While
this assertion is not borne out completely by the record,
in the view we take, its truth is not of controlling conse-
quence. The businesses and activities described could
not be carried on in the volume indicated without the
employment of large amounts of capital and in fact some
corporations engaged in these activities were shown to
have a large capitalization. It was not necessary that the
particular amounts be specified. That capital, if invested
in the business of individuals, is moneyed capital in the
hands of individual citizens, within the meaning of § 5219.
If invested in corporations, as appears in some instances,
the share capital in the hands of shareholders is likewise
moneyed capital within the meaning of that section.

It is said also that the evidence as to individuals was
that large amounts of credits, including bonds, mortgages
and notes were acquired by individuals by loan or pur-
chase in the state and county, but that there is no evidence
tending to show that any of these securities were held or
employed by individals in banking or investment business

or in any other business.  But as we have held in *First National Bank of Hartford* v. *City of Hartford*, the competition guarded against by § 5219 may arise either from the employment of capital invested in a business, even though the competition be with some but not all phases of the business of national banks, or it may arise from the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks.

It is also urged that the record does not admit of a finding that the funds invested in these credits come into competition with national banks within the meaning of § 5219. To this it is answered by respondent that the court is required to take judicial notice of general conditions to which the law applies and that the taxing laws of Minnesota construed in the light of conditions generally known, show upon their face that they create a discrimination against national banks not permitted by the federal act. But it is unnecessary for us to enter upon the field of judicial notice, for it clearly appears from the evidence, as the court below found, that a large proportion of these investments consisted of investments of individuals out of surplus funds which they were investing and reinvesting in bonds, mortgages and other evidences of indebtedness and that these transactions or continued activities are such as normally constitute an important part of the business of banking as conducted by respondent and other national banks in Minnesota.  There is direct evidence, also, that the investments of individuals in this type of security aggregating large amounts lessens the opportunity for the investment of capital by national banks.  The only witness called by petitioner admitted that to some extent such competition existed.  In this state of the record we think the findings of the state court are supported by the evidence.

That capital of individuals thus seeking investment and reinvestment in competition with the capital in national banks is moneyed capital coming into competition with the business of national banks within the meaning of § 5219 is the effect of our decision in *First National Bank of Hartford* v. *City of Hartford, supra,* and other cases there considered.

*Judgment affirmed.*