## PUBLIC NAT. BANK OF NEW YORK v. KEATING et al.

District Court, S. D. New York.
Jan. 22, 1930.

See also 29 F.(2d) 621.

Moses & Singer, Martin Saxe, Henry L. Moses, Robert C. Beatty, and Herman G. Kopald, all of New York City, for plaintiff.

George P. Nicholson, William H. King, and Eugene Fay, all of New York City, for defendants.

BONDY, District Judge.

This suit was brought to enjoin the collection of the taxes for 1926 upon shareholders of the plaintiff under the Tax Law of the State of New York (Consol. Laws, c. 60) on the ground that they were levied in violation of section 5219 of the United States Revised Statutes (12 USCA § 548), which authorizes the taxation of shares of national bank associations by the states, provided that the tax imposed is not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state, coming into competition with the business of national banks.

The New York State Tax Law, as amended by chapter 897, Laws of 1923, in force in 1926, exempted from taxation all intangible personal property except shares of stock of banking associations and other moneyed capital coming into competition with the business of national banks. It provided that the stockholders of every state or national bank should be taxed at the rate of 1 per cent. upon the value of their shares of stock, the value of each share to be ascertained by adding together the amount of the capital stock, surplus, and undivided profits of such bank, and dividing the result by the number of outstanding shares without any deduction for the personal indebtedness of the owners. It also provided that every private banker and investor and every person, association, or corporation, other than banks or trust companies, owning moneyed capital coming into competition with the business of national banks, should furnish, on or before the 1st day of June of each year, to the assessors in the tax district where such owner resides, or if such owner is engaged in the business of banking or investment, then in the tax district where the place of such business is located, a statement of the value of such moneyed capital, and that the same should be taxed at the rate of 1 per centum upon the value thereof without any deduction for the personal indebtedness of such owners or holders.

In People ex rel. Pratt v. Goldfogle, 242 N. Y. 277, 151 N. E. 452, the Court of Appeals on March 30, 1926, held that money used by a firm engaged in a general banking and investment business was moneyed capital used in competition with national banks. In appeals decided at the same time, it held that moneyed capital was not used in competition with national banks when it was employed in a general stock brokerage business (People ex rel. Broderick v. Goldfogle, 242 N. Y. 540, 152 N. E. 418; People ex rel. Bonner v. Goldfogle, 242 N. Y. 541, 152 N. E. 418; People ex rel. Berdan v. Goldfogle, 242 N. Y. 542, 152 N. E. 419); in the business of purchasing corporate bonds secured by mortgages on real estate and selling such bonds at a profit to its customers for cash (People ex rel. Peabody, Houghteling & Co. v. Goldfogle, 242 N. Y. 543, 152 N. E. 419); in the business of a factor and commission merchant selling for and financing textile mills (People ex rel. Talcott v. Goldfogle, 242 N. Y. 544, 152 N. E. 420); in the business of dealing in installment paper which comprised contracts of conditional sales, leases, mortgages, or notes, all evidencing the sale of merchandise on the installment or deferred payment plan (People ex rel. Bankers' Commercial Sec. Co., Inc., v. Goldfogle, 242 N. Y. 545, 152 N. E. 420); or in a stock brokerage business engaged in buying and selling stocks, bonds, and commodities for its customers (People ex rel. Benkard v. Goldfogle, 242 N. Y. 546, 152 N. E. 420).

Referring to these appeals, the court said in the Pratt Case (supra, page 303 of 242 N. Y., 151 N. E. 452, 461): "Our interpretation of competition as meaning an employment of moneyed capital whose characteristic and principal purpose brings it into rivalry with the business of banks is illustrated by companion appeals now before

us in cases where assessments of moneyed capital have been set aside as unauthorized by the statute. These are cases where assessments were made of capital employed by individuals in the business of stock brokers and at times in carrying stocks for customers on a margin; in dealing in corporate bonds; in the factorage business wherein moneys are advanced to manufacturers; in the business of purchasing conditional sales contracts, etc., calling for payments of installments. In none of these businesses was the primary and characteristic purpose for which the moneyed capital was employed one which was in competition with any branch of business which national banks are authorized to conduct, but whatever supposed competition there was in the way of loaning money was indirect and remote and was simply incidental to the main business which was not a competitive one, and therefore the moneyed capital employed under such circumstances did not come within the meaning of the statute."

The 1926 moneyed capital assessment rolls disclose that the stockholders of national banks in the city of New York were assessed $570,030,574 and national banks situated elsewhere in the state $133,052,330.71, or $703,082,904.71 in the aggregate, but that only 150 individuals were assessed for moneyed capital in the city of New York and only 60 elsewhere in the state, and that the 150 individuals were assessed $50,320,100 and the 60, $749,502.18, or $51,069,602.18 in the aggregate, on which the tax of 1 per cent. amounted to $510,696.02; that only 100 corporations were assessed for moneyed capital in New York City and 17 elsewhere in the state; and that the assessment against the 100 corporations was only $50,239,300 and against the 17 remaining corporations $1,004,177.52, amounting in the aggregate to $51,243,477.52.

Of the 150 individual assessments on the 1926 assessment rolls in New York City, 40 were against statutory bankers and 95 against members of firms engaged in the banking business, all assessed at their business addresses.

Fifty-two of the 60 individuals assessed elsewhere in the state were private bankers.

It also appears that the assessments for competitive moneyed capital in New York City alone shrank from $522,401,768 in 1923, $468,817,731 in 1924, and $503,269,850 in 1925, to $100,559,400 in 1926, when the Pratt Case was decided.

After the 1926 assessments were made and after the decision in the Pratt Case, the United States Supreme Court rendered its decision in First National Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1; Minnesota v. First National Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774; Georgetown National Bank v. McFarland, 273 U. S. 568, 47 S. Ct. 467, 71 L. Ed. 779; and Commercial National Bank of Miles City v. Custer County, 275 U. S. 502, 48 S. Ct. 155, 72 L. Ed. 395, mainly relied on by the plaintiff.

These cases, unlike the Pratt Case, involved statutes which discriminated against national banks by imposing an ad valorem tax on the banks and exempting other moneyed capital from taxation (First National Bank v. Hartford, supra), or by imposing a tax on bank shares at a greater rate than was imposed on competing credits in the hands of individuals (Minnesota v. First National Bank). In none of these cases did the court consider a statute which, like the one under consideration, imposed the same tax on banks and on moneyed capital coming into competition with the business of national banks.

These cases assert that the requirement of approximate equality in taxation is not limited to investment of moneyed capital in shares of state banks or to competing capital employed in private banking, but that it applies as well to moneyed capital in the hands of individuals which is employed in making investments by way of loan, discount, or otherwise, in notes, bonds, real estate mortgages, or other securities or evidences of debt with a view to sale or repayment and reinvestment, and that as section 5219 (12 USCA § 548) expressly provides, only those personal investments which are not made in competition with the business of national banks are excluded from moneyed capital within the meaning of this section. These cases assert that competition may exist between other moneyed capital and capital invested in national banks, even though competition be with some but not all phases of the business of national banks; that it may arise from the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks; and that it arises, not by reason of the character of the business of those who compete, but from the manner of employment of the capital at their command.

The plaintiff contends that the Court of Appeals in the Pratt Case construed the state statute in such a way as to exclude from its operation all moneyed capital of brokers, dealers in bonds, factors, and commission merchants, however employed, and all moneyed capital other than such as was employed in a banking business, or a business akin thereto, and that the 1926 assessments of competitive moneyed capital accordingly were made only against such individuals as were engaged in the business of banking, or a business akin thereto, or in financial operations deemed to amount to a business in competition with the business of national banks. The defendant, on the contrary, contends that the opinion in the Pratt Case does not conflict with the decisions of the United States Supreme Court, and that the Court of Appeals did not lay down a rule which prevented the assessment of any competing moneyed capital, and that there was not any intentional or systematic failure to assess all such capital.

■ Section 5219 (12 USCA § 548) makes the validity of the tax on shares of national banks by the states depend upon whether or not the tax imposed is at a greater rate than is actually assessed on other competing moneyed capital in the hands of individual citizens of the state, and not merely upon whether the wording of the state legislation complies with the section, or whether the state courts correctly interpret the decisions of the Supreme Court.

There is not any reason for limiting the application of section 5219 (12 USCA § 548) to state statutes which are discriminatory on their face and not extending it to substantial discrimination which arises through misconstruction or misapplication of statutes by the taxing officers. The discrimination operates with the same force and effect in both cases to the prejudice of national banks.

The important question, therefore, is whether or not the evidence is sufficient to establish substantial discrimination.

■ Section 5219 (12 USCA § 548) is violated wherever capital substantial in amount, when compared with the capitalization of national banks, employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business, escapes taxation or is taxed at a rate less than is assessed upon shares of national banks. First National Bank v.

Hartford, supra, page 558 of 273 U. S., 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1.

There is evidence that directories, financial reports, newspapers, stock exchange lists, and questionnaires were used in making up the 1926 assessment rolls and that some members of stock exchange houses, some brokers carrying stock for customers on margin, some dealers in commercial paper and acceptances, some bond dealers, and some persons lending money on call were included in the final assessment roll. It is also a fact that all owners of competitive moneyed capital were required by statute to file annual reports.

■ The record, however, discloses testimony of experts in finance, well qualified to express opinions, that in 1926 billions of dollars were employed by thousands of brokers, private bankers, bond dealers, individual investors of surplus funds, firms, and corporations in the city of New York and elsewhere in the state of New York in investing and reinvesting, dealing in bonds, notes, commercial paper, acceptances, real estate mortgages and other securities and evidences of debt, lending money on call or on time, with or without security, discounting commercial paper, and making loans or advances to customers upon collateral security, and that they did so in substantially the same manner as did national banks in the city of New York and elsewhere in the state, and that in doing so they competed with the business of national banks.

All this large amount of competitive moneyed capital, excepting $51,069,602.18 in the hands of 210 individual citizens and $51,243,477.52 employed in competing businesses by 117 corporations, was exempted from the 1 per cent. ad valorem tax imposed on national bank shares without being subjected directly or indirectly to any taxation whatsoever unless income was earned thereon.

Though the evidence is very general in its character and not as specific as might be desired, I believe it to be sufficient to prove that national bank shares were made to sustain a far heavier burden of taxation than was imposed on a substantial amount of competitive moneyed capital in the hands of individual citizens of the state (see Minnesota v. First National Bank, supra, pages 566, 567 of 273 U. S., 47 S. Ct. 468, 71 L. Ed. 774), and that accordingly the relief prayed for should be granted.