## SOUTH BROADWAY NAT. BANK OF DENVER, COLO., v. CITY AND COUNTY OF DENVER.

### No. 378.

Circuit Court of Appeals, Tenth Circuit.
July 23, 1931.

James D. Benedict, of Denver, Colo. (Horace Phelps, of Denver, Colo., on the brief), for appellant.

Charles H. Haines, of Denver, Colo. (Thomas H. Gibson, of Denver, Colo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

This is an action at law to recover $7,160.36 paid by the bank in 1928 to the Treasurer of the City and County of Denver under alleged duress, as ad valorem taxes levied in 1927. The questions presented are confined to pleading and remedy. The defendant answered, admitted some allegations, denied others and alleged that the manner in which the assessment was made, of which plaintiff complains, was done at plaintiff's request. That is, the value of plaintiff's capital stock was assessed to plaintiff as agent for its stockholders at plaintiff's request. The answer embodied a demurrer to the complaint, which was sustained when the case came on, and the plaintiff has appealed.

The complaint alleges that the tax levy was invalid and illegal, and that claim is bottomed on three separate grounds, first, the manner in which the assessment was made rendered it illegal, second, that substantial sums invested in negotiable securities, such as Colorado municipal bonds and notes secured by real estate mortgages, by persons engaged in banking business or investment business and in competition with the business of plaintiff were not taxed at all, nor was the moneyed capital or shares of such banks or investment companies taxed, and, third, that the assessment here complained of was made at the full value of plaintiff's shares while other moneyed capital in Denver was not assessed at a higher valuation than seventy-five per cent., if assessed at all. We will consider these grounds in the order stated. But before doing so the Act of Congress and the Colorado statutes on the subject should be noticed. Section 5219, R. S. U. S., as amended by the Acts of March 4, 1923 and March 25, 1926 (U. S. Code Anno., title 12, § 548), permits the legislature of each state to determine and direct the manner of taxing the shares of national banks located within such state, and the Colorado Revised Statutes (Compiled Laws, 1921, §§ 7450, 7451, 7452, and 7453) make full provision for taxing the shares. They provide that the president, cashier or other officer of any banking association, state or national, shall list for taxation the shares of such association between the first day of April and the first day of May of each year, giving the assessor the name of each person owning shares and the amount owned by each; and, if said officers fail to comply with said requirement, the association shall be liable to pay the tax upon all the shares, and its property may be distrained and sold with like effect as if the tax were assessed against such association; that it shall be the duty of the cashier or other officer of each national bank, state bank and trust company to make and deliver to the assessor between the dates named in each year a sworn statement of the true condition of the association as the same appears on its books on April first of each year, and at the same time make a sworn statement to the assessor of the market value of the stock of said association, or, if it had no market value, the actual book value; that each assessor shall assess the shares in any national bank in such manner as to conform to the act of Congress and its amendments. Section 7249 of the state statutes requires that all personal property in the state be listed and assessed as of April first of each year.

Relative to the first ground of illegality the complaint alleges:

"That plaintiff made and filed with the Assessor of the City and County of Denver, State of Colorado, a schedule for the year 1927 setting forth the amount of its capital stock, surplus and undivided profits as of April 1, 1927, and attached thereto a list of its loans secured by deeds of trust or

mortgages upon real estate within the State of Colorado, and likewise made and filed with said Assessor a statement of its financial condition as of April 1, 1927."

This is all of the information that appears to have been given to the assessor by the tax schedule. It is not alleged that the bank's officers furnished him a list of the persons and the number of shares owned by each in the bank, nor that they furnished him with a sworn statement as to the value of the shares.

There are allegations that the assessment was made on the property of plaintiff consisting of its money, notes and credits, and other allegations that it was made on the amount of its capital stock, surplus and undivided profits. The former appear to be made arguendo. On the whole complaint we think it appears that the assessment was to the bank in solido in a sum equal to the amount of the capital stock, surplus and undivided profits, as shown by the tax schedule submitted to the assessor by the bank. The schedule furnished to the assessor gave the amount of the capital stock, surplus and undivided profits. It is not claimed that the assessor was furnished a list of the stockholders and the shares owned by each, or a statement of their value by the bank or by anyone else, or that he had or was given any information as to those facts. In First National Bank of Aberdeen v. Chehalis County, 6 Wash. 64, 32 P. 1051, it appears that the cashier of the bank delivered to the assessor a list of its stockholders and the amount of capital stock held by each, but the assessor assessed the whole of it to the corporation in solido. It was contended that this manner of assessment was forbidden by said section 5219. The court overruled the contention as unsound, placing its conclusion on what was said in National Bank v. Commonwealth of Kentucky, 9 Wall. 353, 19 L. Ed. 701. The Aberdeen Bank appealed, but the Supreme Court sustained the action of the state court in holding the assessment valid. Aberdeen Bank v. Chehalis County, 166 U. S. 440, 17 S. Ct. 629, 41 L. Ed. 1069.

On this point appellant seems to rely on First National Bank v. Adams, 258 U. S. 362, 42 S. Ct. 323, 66 L. Ed. 661. We do not think the case is applicable to the facts here. The assessments there sought to be enforced were for back taxes for several years and on property of the bank. It does not appear that the shares of stock had not been assessed to the share owners for those years. The assessor was ordered by the state revenue agent to make the assessment, and as made on the rolls pursuant to the order it was in these words, "Amount of all other personal property not otherwise mentioned, $174,000.00." When the controversy was taken to court objection was made that the corporation was assessed and not the stockholders. The court overruled the objection and directed the board of supervisors to assess the bank "with capital stock, surplus and undivided profits and any and all other property assessable to said bank in the sum of $75,150.00," for the three past years, "which said property was at said time owned by said First National Bank and which had escaped taxation for each of the years as hereinbefore set out; and the said board of supervisors is hereby directed to make such assessment by way of additional assessment" on said tax list. The rule announced in the Aberdeen Bank Case is not questioned or referred to.

The Colorado statute (section 7447), on which plaintiff relies, permits recovery only when the taxes paid are thereafter "found to be erroneous or illegal." An Arkansas statute provided that taxes paid on real or personal property "erroneously assessed" should be refunded. The Supreme Court of that state in considering the statute said in Clay County v. Brown Lumber Co., 90 Ark. 413, 119 S. W. 251, 253:

"It is urged by the appellee that an excessive valuation of property is an erroneous assessment thereof within the meaning of section 7180 of Kirby's Digest, so that a remedy is here given to one, who has paid taxes under these circumstances, by having the taxes refunded; but we do not think that the term 'erroneously assessed,' as used in said section, refers to an overvaluation of the property. The term 'erroneous assessment,' as there used, refers to an assessment that deviates from the law and is therefore invalid, and is a defect that is jurisdictional in its nature, and does not refer to the judgment of the assessing officers in fixing the amount of the valuation of the property."

Moreover the word "erroneous" in section 7447 takes color from its associate. In Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, page 487, 33 S. Ct. 942, 943, 57 L. Ed. 1288, the court concluded its consideration of this section in these words:

"Thus it will be perceived that, if the taxes in question were illegal and void, as asserted, the company had a remedy at law. It could pay them, and, if the commissioners

refused to refund, have its action against the county to recover back the money."

In First National Bank v. Patterson, 65 Colo. 166, which involved the assessment of national bank shares the court said at page 174, 176 P. 498, 501:

"But apart from this, if the tax was not legally laid, plaintiff in error could, upon payment thereof, recover the same from the county under the provisions of" this section.

See, also, on the point: Boston Manuf'g, Co. v. Commonwealth, 144 Mass. 598, 12 N. E. 362; Southern California H. & Mfg. Co. v. Los Angeles County, 49 Cal. App. 713, 194 P. 62; Wiesmann v. Town of Brighton, 83 Wis. 550, 53 N. W. 911. We are unable to see that section 7447 is more than a declaration of the common law right on the subject, at least for the purposes of this case; for, as to the assessment, it is only alleged that it was illegal and invalid, which if true would sustain indebitatus assumpsit. Denver v. Evans, 35 Colo. 490, 84 P. 65; Bailey v. Railroad Co., 22 Wall. 604, 638, 22 L. Ed. 840; Ward v. Love County, 253 U. S. 17, 24, 40 S. Ct. 419, 64 L. Ed. 751.

In Stanley v. Supervisors of Albany, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000, the action was at law to recover taxes paid on an assessment of national bank shares, and it was claimed the assessing officers adopted and acted on a rule of assessing such shares at their par value irrespective of their actual value, which resulted in discrimination in favor of other moneyed capital in competition with national banks; that the rule denied equal protection; that the state statute exempted a vast amount of other moneyed capital from taxation; and that if the assessment should not be considered wholly void it should be held void as to the excess over the average rate assessed on other moneyed capital. The court said at page 549 of 121 U. S., 7 S. Ct. 1234, 1239:

"The method pursued could in no respect be considered as adopted in hostility to the national banks. It must sometimes place the estimated value of their shares below their real value; but such a result is not one of which the holders of national bank shares can complain. It must sometimes lead also to overvaluation of the shares; but, if so, no ground is thereby furnished for the recovery of the taxes collected thereon. It is only where the assessment is wholly void, or void with respect to separable portions of the property, the amount collected on which is ascertainable, or where the assessment has been set aside as invalid, that an action at law will lie for the taxes paid, or for a portion thereof. Overvaluation of property is not a ground of action at law for the excess of taxes paid beyond what should have been levied upon a just valuation. The courts cannot, in such cases, take upon themselves the functions of a revising or equalizing board."

This was reaffirmed in Williams v. Supervisors of Albany, 122 U. S. 155, 7 S. Ct. 1244, 30 L. Ed. 1088. Later the principle was again announced in Western Union Telegraph Co. v. Missouri ex rel. Gottlieb, 190 U. S. 412, 425 et seq., 23 S. Ct. 730, 47 L. Ed. 1116. See, also, Balfour v. City of Portland (C. C.) 28 F. 738; Raleigh v. Salt Lake City, 17 Utah, 130, 53 P. 974; Shelden v. Township of Marion, 101 Mich. 256, 59 N. W. 614; National Metal Edge Box Co. v. Town of Readsboro, 94 Vt. 405, 111 A. 386; Williams v. City of Saginaw, 51 Mich. 120, 16 N. W. 260; Dexter v. City of Boston, 176 Mass. 247, 57 N. E. 379, 79 Am. St. Rep. 306.

In Montana National Bank v. Yellowstone County, 276 U. S. 499, 48 S. Ct. 331, 72 L. Ed. 673, the action was at law by the bank to recover taxes that it had paid and alleged by it to be illegal. The Montana Supreme Court had so construed its state statute as to authorize taxation of either the shares of stock in state banks to the individual shareholders or to tax the property of such banks to the banks themselves. Taxing officials adopted the second alternative. That, of course, brought the state statute, as construed and acted upon, in conflict with the restriction in said section 5219, and rendered taxation of national bank shares in that state invalid and illegal, as the court held. The plaintiff was therefore entitled to recover the taxes that it had paid on the shares of its stock. The vice was in the statute as construed. Again, in First National Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1, the bank was held entitled to recover at law the amount of taxes illegally assessed on its shares. There again the state statute discriminated against national banks in violation of the restriction in said section 5219. It might be said of this case, as was said in the Montana case, that it would have availed the taxpayer nothing to have applied to state administrative boards for relief, because the taxing officials had acted in conformity to the state statute. In Minnesota v. First National Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774, the state sued the bank to recover taxes

that had been assessed against its shareholders for the years 1921 and 1922. The Minnesota statutes provided for different rates of taxation on moneys and credits, on real estate mortgages and on shares in national banks. Again it was held that the statute, as enforced, was in conflict with section 5219, and, of course, the state could not recover. Appellant also refers us to Central National Bank v. McFarland (D. C.) 20 F.(2d) 416, Id. (C. C. A.) 26 F.(2d) 890. There again the vice was in the statute which provided for a higher rate of taxation on national bank shares than that imposed on credits and other moneyed capital. The bank conceded validity of a tax on its shares to the extent of the lower rate provided for credits and other moneyed capital, and, after paying the whole amount, recovered the excess as invalid. All these cases, cited supra, beginning with First National Bank v. Adams, have no application as we view it to the facts alleged in this case to sustain the claim that this assessment was invalid and illegal.

In Goldsmith v. Standard Chemical Co. (C. C. A.) 23 F.(2d) 313, relied on by appellant, the facts are these: The taxpayer in his schedule put a full valuation on his property for taxation, as the statute requires. The assessor arbitrarily raised this valuation in large amounts. The taxpayer complained and sought administrative relief from the assessor as provided in sections 7291 and 7292, Colorado Compiled Laws, 1921. Relief was denied. The taxpayer paid the tax under protest and sued to recover the amount on excess valuation. The defendant admitted by demurrer—refusing to plead further—overvaluation to the extent claimed. The amount of tax on the excess was, of course, easily ascertainable, and judgment for the taxpayer was affirmed. There was no dispute about the controlling facts in the McFarland and Goldsmith Cases. They were fixed by statute in the McFarland Case and admitted by the defendant in the Goldsmith Case, and it is believed that the action of the courts in those cases was within the principle announced in Stanley v. Supervisors of Albany. We think the facts stated in the complaint for the purpose of showing that the assessment was invalid and illegal fail in that respect.

 The other two grounds on which illegality is claimed may be considered together. As alleged they consist in omitting from taxation moneyed capital used in business in competition with the bank, and overvaluation of the shares of stock of plaintiff as compared to the valuation of other moneyed capital, "if assessed at all."

There are two kinds of moneyed capital used in competition with the business of national banks, as alleged in the complaint, that were not taxed for the year 1927; first, notes and other evidences of indebtedness secured by deeds of trust or mortgages on real estate in the City of Denver in excess of the sum of $10,000,000. The Colorado statute, referred to in the complaint (section 7195), provides:

"That where any property within this state is mortgaged, conveyed or pledged for the security of a loan or debt then owing, the said property and the notes, mortgage, deed of trust, trust deed, contract or other conveyance, shall be assessed as a unit, and as one and the same, and as of one value and as the value of said property so mortgaged, pledged or otherwise conveyed only, and any such notes, mortgages, deeds of trust, trust deeds, contract or conveyance, shall not be otherwise returned or assessed."

Obviously this statute requires that the whole value of the mortgaged property shall be assessed to the owner, and not simply his equity therein. Washington County v. Murray, 71 Colo. 522, 208 P. 472. Its effect is to impose on him the payment of the taxes that might otherwise be assessable to the owner of the secured indebtedness. We are therefore unable to see how the contention can be maintained that the indebtedness thus secured escapes taxation. The other class of property is alleged to be exempt from taxation. It consists of Colorado state and Colorado municipal bonds, said to be in excess of $10,000,000.00, in the hands of persons engaged in the banking and investment business in competition with the business of plaintiff. The business reasons for exempting such securities from taxation in the states or municipalities that issue them are obvious, and it is safe to say that that practice is well nigh universal. It has been held by the Supreme Court that such exemptions are not in conflict with that provision of section 5219: "In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks." In People of State of New York ex rel. Duer v. Commissioners of Taxes & Assessments, 4 Wall. 244, 256, 18 L. Ed. 344, it was contended by a shareholder in a national bank that the assessment upon his shares was at a greater rate than up-

on the personal property of individual citizens, upon the ground that no allowance was made on account of United States securities held by the bank. In construing said restriction the court said:

"The answer is, that upon a true construction of this clause of the act the meaning and intent of the law-makers were, that the rate of taxation of the shares should be the same, or not greater, than upon the moneyed capital of the individual citizen which is subject or liable to taxation. That is, no greater proportion or percentage of tax in the valuation of the shares should be levied than upon other moneyed taxable capital in the hands of the citizens.

"This rule seems to be as effectual a test to prevent unjust discrimination against the shareholders as could well be devised. It embraces a class which constitutes the body politic of the State, who make its laws and provide for its taxes. They cannot be greater than the citizens impose upon themselves. It is known as sound policy that, in every well-regulated and enlightened state or government, certain descriptions of property, and also certain institutions—such as churches, hospitals, academies, cemeteries, and the like—are exempt from taxation; but these exemptions have never been regarded as disturbing the rates of taxation, even where the fundamental law had ordained that it should be uniform."

This rule has been adhered to. In Des Moines Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 24, 68 L. Ed. 191, the court said that Congress intended "that all shares in such banks should be taxable to their owners, the stockholders, much as other personal property is taxable, but subject to the restriction that the shares be not taxed higher than other taxable moneyed capital employed in competition with such banks. * * *" We see no merit in this contention. That the bonds issued by the state and its municipalities are exempted from taxation is not a discrimination against national banks in violation of said section 5219.

In First National Bank of Greeley v. Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784, plaintiff sued at law to recover taxes paid on an assessment of national bank shares. It was claimed that the taxes were excessive, discriminatory and violative of said section 5219 in that they were assessed at a higher valuation than other property. It was there held that the plaintiff could not maintain its action, having failed to avail itself of the administrative remedy afforded by the state statute. In that connection it may be said here that, if any taxable property used in competition with the business of the bank was omitted from the tax roll, the state tax commission had full power to correct the error or oversight when called to its notice. But the plaintiff made no complaint of that kind to the commission. Sections 7335, 7336, Colorado Compiled Laws 1921. The complaint shows that plaintiff did apply to the County Board of Equalization and then to the Colorado Tax Commission and was denied relief, but the only relief it sought was a refund of the taxes it had paid. It did not go to either of those administrative bodies until after it had paid the tax.

But appellant insists that under the rule in Goldsmith v. Standard Chemical Company, supra, its objections to the assessor were enough to entitle it to sue. It is alleged that prior to payment it objected in writing to the assessment and the valuation, which was overruled. We have already stated the facts in that case. The complaint in that action showed a full compliance by the taxpayer with the requirements of the statute. The plaintiff, the Chemical Company, furnished the assessor a correct schedule of its taxable property, stating therein its full and true value, and the assessor arbitrarily increased the amounts so given as values in large sums. Here the taxpayer furnished the assessor the amount of its capital stock, surplus and undivided profits, and the total of those amounts were placed on the tax roll by the assessor. The assessor thus used the value given by the taxpayer. His action cannot be said to have been arbitrary or oppressive. Moreover, an error as to valuation of property for taxation does not go to the question of jurisdiction of the taxing officer, and even if excessive it does not render the tax illegal and void, which is necessary in order to recover in an action at law. Stanley v. Supervisors of Albany, supra.

"Undoubtedly, for merely irregular assessments, where the authorities have jurisdiction to act, the statutory remedy is also the exclusive remedy." Ogden City v. Armstrong, 168 U. S. 224, 239, 18 S. Ct. 98, 104, 42 L. Ed. 444.

We conclude that the court below did not err in dismissing the complaint on demurrer.

Affirmed.