142 So. 93

## WARD, Tax Collector, v. FIRST NAT. BANK OF HARTFORD.

### 4 Div. 636.

Supreme Court of Alabama.

May 12, 1932.

Mulkey & Mulkey, of Geneva, for appellant.

T. M. Espy, of Dothan, and A. A. Smith, of Hartford, for appellee.

Cabaniss & Johnston, of Birmingham, amici curiæ.

**GARDNER, J.**

Appellee (plaintiff in the court below) is engaged in the banking business at Hartford, Geneva county, Ala., having been organized under the laws of the United States.

The assessment for taxes on the shares of stock in the bank for the year 1930 amounted to $1,096.18, and the tax collector demanded payment, threatening a levy if not paid. On May 4, 1931, the attorney for the bank tendered the amount due, protesting at the time that it was illegal, and serving on the collector a protest in writing which also gave notice that suit would at once be instituted for its recovery. The collector receipted for the money, which receipt expressly recognized the payment under protest both verbal and written and made because of a threatened levy. A payment under protest was sufficiently shown, under the authority of Raisler v. Mayor, etc., of Athens, 66 Ala. 194.

While the assessment may be against the shareholders, all details as to report to the taxing authorities is made by the bank officials, and the bank is directed to make the payment of such tax, with the express provision that "it shall be no ground of objection to such assessment of shares that it is entered upon the assessment book in the corporate name of the bank." Gen. Acts 1923, pp. 161, 162. Having thus paid the money to the tax collector for and on behalf of the shareholders, the bank may legally discharge the tax collector upon a refund, and may therefore properly maintain this suit for its recovery. Bibb v. Hall & Farley, 101 Ala. 79, 14 So. 98; Rice v. Rice, 106 Ala. 636, 17 So. 628. The cases of McFarland, Treas. v. Cent. Nat. Bank (C. C. A.) 26 F.(2d) 890, and Boise City Nat. Bank v. Ada County (D. C.) 37 F.(2d) 947, are much in point, dealing with like situations as here presented, and fully supporting the conclusion reached.

It is well settled that where nothing remains to be done, but the payment of the money, recovery may be had on the common counts. Joseph & Bros. Co. v. Hoffman &

McNeill, 173 Ala. 568, 56 So. 216; Catts v. Phillips, 217 Ala. 488, 117 So. 34.

The first count of the complaint is for money had and received. If plaintiff is entitled to recover at all, such recovery may be rested upon such a count. Under these circumstances, it becomes unnecessary to consider the question as to the accuracy of averments of the special counts 3 and 4, for even though their insufficiency should be conceded (a question not decided nor even intended as indicated), the error in overruling the demurrer thereto would have been harmless. Gillis v. White, 214 Ala. 22, 106 So. 166; Hamilton v. O'Rear, 224 Ala. 625, 141 So. 565.

We pass, therefore, to the merits of the case. Plaintiff rested its right of recovery upon the theory the tax assessed was illegal and void as violative of section 5219, U. S. Revised Statutes (12 USCA § 548), which as here pertinent reads as follows: "In the case of a tax on said shares, the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State *coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business * * * shall not be deemed moneyed capital within the meaning of this section.*" (Italics supplied.)

And the unlawful discrimination relied upon relates to proof of numerous loans of money, aggregating $234,000, by various individuals within a radius of its banking activities in and around Hartford, Ala., which loans were secured by mortgages on real estate, on personalty, and some by personal indorsements, with the added proof that this money was not taxed. Section 3022, Code 1923.

Plaintiff bank was shown to have made loans of like character and that during the period here in question made such loans in and within a radius of ten miles of Hartford, averaging about $100,000, with a capital stock of $30,000. That portion of section 5219, supra, which is italicized, was added by amendment by the Act of March 4, 1923, 42 Stat. 1499 (12 USCA § 548), but it has been held that such amendment does not change the meaning of the act as previously interpreted. First Nat. Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 138, 70 L. Ed. 295.

■■ It is well settled that national banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal policies, and therefore such banks, their property, and their shares cannot be taxed under state authority, except as Congress consents and then only in conformity with the restrictions attached to its consent. Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; First Nat. Bank v. Anderson, supra; Roberts v. American Nat. Bank, 97 Fla. 411, 121 So. 554.

■ Upon the question here presented, the decisions of the Federal Supreme Court are, of course, controlling, and the case therefore turns upon a proper interpretation thereof. The following excerpts from the decided cases will prove helpful in an understanding of the conclusion reached:

"The purpose of the restriction is to render it impossible for any state, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking. Mercantile National Bank v. New York, 121 U. S. 138, 155, 7 S. Ct. 826, 30 L. Ed. 895; Des Moines National Bank v. Fairweather, supra, 116 [of 263 U. S., 44 S. Ct. 23].

"The term 'other moneyed capital,' in the restriction, is not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such way as to bring it into substantial competition with the business of national banks. Mercantile National Bank v. New York, supra, 157 [of 121 U. S., 7 S. Ct. 826]; Aberdeen [First Nat.] Bank v. Chehalis County, 166 U. S. 440, 461, 17 S. Ct. 629, 41 L. Ed. 1069.

"Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking, and also where it is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount or otherwise, in notes, bonds or other securities with a view to sale or repayment and reinvestment. Mercantile National Bank v. New York, supra, 155, 157 [of 121 U. S., 7 S. Ct. 826]; Palmer v. McMahon, 133 U. S. 660, 667, 668, 10 S. Ct. 324, 33 L. Ed. 772; Talbott v. Silver Bow County, 139 U. S. 438, 447, 11 S. Ct. 594, 35 L. Ed. 210.

"The restriction is not intended to exact mathematical equality in the taxing of national bank shares and such other moneyed capital, nor to do more than require such practical equality as is reasonably attainable in view of the differing situations of such properties. But every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction." First National Bank v. Anderson, supra.

"From the section cited, it appears that the tax statutes of Wisconsin discriminate in favor of moneyed capital and capital investments within the state, represented by credits

or intangibles, and against that invested in shares in banking corporations.

"But it is not sufficient to show this discrimination alone. The validity of the tax complained of depends upon whether or not the moneyed capital in the state thus favored is employed in such a manner as to bring it into substantial competition with the business of national banks.

"The question thus raised involves considerations both of fact and of law. To answer it, it is necessary to ascertain the nature and extent of the moneyed capital in the hands of individual citizens within the state and the relation of its employment, in point of competition, to the business of plaintiff and other national banks. It is necessary also to ascertain the precise meaning to be given the statute as applied to the facts in hand in order to determine whether the particular moneyed capital and the particular competition with which we are here concerned are moneyed capital and competition within the spirit and purpose of the statute. The question is thus a mixed one of law and fact, and in dealing with it we may review the facts in order correctly to apply the law. * * *

"Competition may exist between other moneyed capital and capital invested in national banks, serious in character and therefore well within the purpose of section 5219, even though the competition be with some but not all phases of the business of national banks. Section 5219 is not directed merely at discriminatory taxation which favors a competing banking business. Competition in the sense intended arises not from the character of the business of those who compete but from the manner of the employment of the capital at their command. No decision of this court appears to have so qualified section 5219 as to permit discrimination in taxation in favor of moneyed capital such as is here contended for. To so restrict the meaning and application of section 5219 would defeat its purpose. It was intended to prevent the fostering of unequal competition with the business of national banks by the aid of discriminatory taxation in favor of capital invested by institutions or individuals engaged either in similar businesses or in particular operations or investments like those of national banks. Mercantile Bank v. New York, supra [121 U. S.], 155 (7 S. Ct. 826 [30 L. Ed. 895]). With the great increase in investments by individuals and the growth of concerns engaged in particular phases of banking shown by the evidence in this case and in State of Minnesota v. First National Bank of St. Paul, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774, to-day decided, discrimination with respect to capital thus used could readily be carried to a point where the business of national banks would be seriously curtailed. Our conclusion is that section 5219 is violated wherever capital, substantial in amount

when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business. * * *

"There was also, we think, sufficient evidence that private individuals as investors of surplus funds are engaged in loaning money at interest on real estate mortgages and other evidences of indebtedness such as normally enter into the business of banking and that these investments are of substantial amount. We do not conceive that in order to establish the fact of competition it is necessary to show that national banks and competing investors solicit the same customers for the same loans or investments. It is enough as. stated if both engage in seeking and securing in the same locality capital investments of the class now under consideration which are substantial in amount. * * *

"But a consideration of the entire course of judicial decision on this subject can leave no doubt that state legislation and taxing measures which by their necessary operation and effect discriminate against capital invested in national bank shares in the manner described are intended to be forbidden." First National Bank v. City of Hartford, 273 U. S. 548, 47 S. Ct. 462, 463, 71 L. Ed. 767, 59 A. L. R. 1.

"It is said also that the evidence as to individuals was that large amounts of credits, including bonds, mortgages, and notes, were acquired by individuals by loan or purchase in the state and county, but that there is no evidence tending to show that any of these securities were held or employed by individuals in banking or investment business or in any other business. But, as we have held in First National Bank of Hartford v. City of Hartford, the competition guarded against by section 5219 may arise either from the employment of capital invested in a business, even though the competition be with some, but not all, phases of the business of national banks, or it may arise from the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks." State of Minnesota v. First National Bank, 273 U. S. 561, 47 S. Ct. 468, 470, 71 L. Ed. 774.

And in Iowa-Des Moines National Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 135, 76 L. Ed. 265, where the discrimination was not in the law itself, but in its erroneous administration, the court said: "The Iowa-Des Moines National Bank is an instrumentality of the United States, and but for section 5219 the state would be without power to tax its shares. First National Bank v. Anderson, 269 U. S. 341, 347, 46 S. Ct. 135, 70 L. Ed. 295. That section permits a state to tax national bank shareholders if, and only so far as, the taxation is not at a rate greater 'than

is assessed upon other moneyed capital in the hands of individual citizens of such State.' The limits of this permission were transgressed when the treasurer exacted from this petitioner taxes at rates greater than those applied in exacting payment from the competing domestic corporations. * * * The discrimination was none the less action by the state although the auditor and the treasurer, in failing to give equal treatment, acted without authority and contrary to the law of the state. 'It is a question of the power of the state as a whole'; and, for the purpose of determining whether the limitations imposed by section 5219 have been observed, the powers of the several state officials must be treated as if merged in a single officer."

■ We gather from these authorities, particularly that of First National Bank v. City of Hartford, supra, that the matter of discrimination in violation of section 5219, Rev. St. U. S. (12 USCA § 548), is a mixed question of law and fact, and is to be determined upon the facts of each particular case. In the Hartford Case, supra, it is pointed out that by the law of Wisconsin all solvent credits are exempt from taxation (as in this state under section 3022, subd. 1, Code 1923), but that moneyed capital invested in shares of banking corporations is assessed. But, says the court: "It is not sufficient to show this discrimination alone. The validity of the tax complained of depends upon whether or not the moneyed capital in the state thus favored is employed in such a manner as to bring it into substantial competition with the business of national banks. The question thus raised involves considerations both of fact and of law. To answer it, it is necessary to ascertain the nature and extent of the moneyed capital in the hands of individual citizens within the state and the relation of its employment, in point of competition, to the business of plaintiff and other national banks."

In that case the plaintiffs relied largely upon proof of competing moneyed capital throughout the state and sufficiently extensive to reach the vicinity of the complaining bank.

■ In the instant case, plaintiff has reversed the order of procedure and made proof of competitive moneyed capital within the radius of its financial activities and without regard to conditions elsewhere in the state. The procedure followed appears to us to meet the requirement of the federal decisions. Competition may exist, though it be with only some, and not all of the phases of the business of national banks, and it may arise by investments by individuals in investments of the character of such banks. It arises, not from the character of the business of those who compete, but from the manner in which they employ the capital at their command. The authorities were so interpreted in Pub-

lic Nat. Bank v. Keating (D. C.) 38 F.(2d) 279, 282, wherein the court said: "Section 5219 (12 USCA § 548) is violated wherever capital substantial in amount, when compared with the capitalization of national banks, employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business, escapes taxation or is taxed at a rate less than is assessed upon shares of national banks."

As to the state at large plaintiff offered no proof, though in view of the exemption from ad valorem taxation of building and loan associations (Gen. Acts 1927, p. 437), domestic or foreign corporations or companies chiefly engaged in making loans on real estate, domestic or foreign industrial loan companies or corporations (Gen. Acts 1927, p. 166, § 25), the court may judicially know that substantial sums of money are thus invested throughout the state in competition with that phase of the business of national banks relating to the loan and investment of its funds.

■ Counsel, appearing as amicus curiæ, insist that the court should judicially know that substantial competition by the moneyed capital enumerated above reaches all national banks in the state, and that proof as to each complaining bank should not be considered necessary. But no authority is cited and none have come to our attention which would justify such a course. It remains, in our opinion, a matter of proof in each case. But we need not enter into the field of judicial knowledge, and that question may be laid aside and undetermined. The proof shows substantial competition by moneyed capital in the loan of money, exempt from taxation, in the vicinity of plaintiff bank. As we interpret them, plaintiff has met the requirements of the federal decisions in this respect.

■ But appellant insists that a large percentage (one-half or more) of the loans shown were by stockholders and officers of the bank which should be eliminated from consideration upon the theory of estoppel. The argument, we think, overlooks the fact that these parties were in the exercise of a personal legal right in a lawful manner, and we are of the opinion their relationship with the bank should not deprive them of their legal rights as individual investors.

■ The argument is also advanced that the bank obtained as much of that character of business as was desired and suffered no injury. The purpose of the statute (section 5219) as expressed in Mercantile Nat. Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 835, 30 L. Ed. 895, was to "prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and pro-

mote \* \* \* to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character."

We do not understand that the restriction of the federal statute is to rest for its enforcement upon proof that in fact the bank was deprived of loans or suffered real injury. It is the fostering of unequal and unfriendly competition with national banks at which the prohibition of the statute is aimed. Indeed, we consider the argument answered in the Hartford Case, supra, where in discussing the question of competition it was held that it was not necessary to show the individuals and the banks sought the same customers for the same loans or investments. But, as stated by the court, "It is enough \* \* \* if both engage in seeking and securing in the same locality capital investments of the class now under consideration which are substantial in amount." A like thought was expressed in Georgetown National Bank v. McFarland, 273 U. S. 568, 47 S. Ct. 467, 71 L. Ed. 779, wherein the court said: "In the course of the opinion the Court of Appeals gave more attention than we think justified to the difference between short-time and long-time loans and to the readiness with which the banks obtain loans, notwithstanding the competition alleged."

The proof shows investments by way of loans by various individuals during the tax period here in question, and in the vicinity of plaintiff bank in the sum of $234,000, and loans by the bank of $148,000, to speak in round numbers. The bank had investments in United States bonds of $82,500, in state bonds of $10,000, and stock in Federal Reserve Bank of $2,400. Its capital stock was $30,000 and deposits of $248,000, with cash and due from banks of $111,000, still speaking in round numbers. But these detail figures are not material to the result. We think the authorities herein noted suffice to show that the moneyed capital of these individuals as investors of surplus funds were engaged in-loaning and reloaning money at interest on real estate mortgages and other evidence of indebtedness such as normally enter into the business of banking and that these investments are of substantial amounts, as noted in First National Bank v. City of Hartford, supra, and that this appearing without conflict, the affirmative charge was properly given for the plaintiff.

Rulings on evidence to which exceptions were reserved, were either free from error or in any event harmless. Some of the proof offered was for the purpose of showing that portions of the money thus loaned found its way back into the bank. We do not see

that this was material. Nor was it material that plaintiff had in previous years paid the tax without questioning its legality under similar conditions.

As to assignment of error 24, it may be conceded defendant on cross-examination should be permitted to test the memory of the witness as to the loans made and to whom; but the question asked broadly covered all loans in 1929, when the witness had only testified concerning those from October 1, 1929, to September 30, 1930. The court could not be put in error therefore under these circumstances. Nor could it be said, in any event, that the ruling on one such isolated amount worked any serious harm.

What has been said, we think, answers the various contentions of appellant and suffices to show our conclusion that the judgment is free from reversible error, and will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.