WELFARE LOAN SOCIETY OF DES MOINES, Appellee, v. CITY OF DES MOINES, Appellant.

MAY 15, 1928.

*Reson S. Jones, Chaucey A. Weaver, George W. Vest,* and *Don G. Allen,* for appellant.

*Dunshee & Brody,* for appellee.

ALBERT, J.—Plaintiff is an Iowa corporation, licensed to do business under the Iowa Chattel Loans Law, known as Chapter 419, Code of 1924. The statutory statement was filed by the plaintiff with the assessor of said city, setting forth the assets and liabilities of the company as of January 1, 1925 (less the real estate), at $21,263. The assessor classified plaintiff's property as other "moneyed capital, within the meaning of Section 5219 and amendments to the Revised Statutes of the United States," referred to in Section 7005, Code of 1924. In due time and form, plaintiff filed a complaint with the board of review of said city, objecting to said classification and assessment. Plaintiff's objections were overruled by the board, but the valuation was reduced by the board to $13,820. In

due time and form, plaintiff appealed to the district court from this action by the board of review.

As above stated, plaintiff corporation was organized and licensed to do business under Chapter 419, Code of 1924. It is limited to $300 in the amount of business it may do with any one person, and the rate of interest charged is not to exceed three and one-half per cent per month. It may, therefore, properly be termed as a "small-loan" corporation, instituted primarily to deal with chattel loans, as indicated by the heading of this chapter, and was instituted for the purpose of protecting the poorer class of people who are compelled by necessity to borrow on their household goods and small holdings of property.

. Section 6985, Code of 1924, provides:

"Moneys, credits, and corporation shares or stocks, except as otherwise provided, cash, circulating notes of national banking associations, and United States legal tender notes, and other notes, and certificates of the United States payable on demand, and circulating or intended to circulate as currency, notes, including those secured by mortgage, accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind, securities, debentures, bonds other than those of the United States, annuities, and corporation shares or stocks not otherwise taxed in kind, shall be assessed and, excepting shares of stock of national, state, and savings banks, and loan and trust companies, and moneyed capital as hereinafter defined, shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides."

It is apparent that the tax to be levied against this small loan corporation is fixed by the above quoted section of the statute, unless it be under the exception in the statute that plaintiff's holdings come within "moneyed capital," as defined in the Code of 1924, Section 7005, which reads as follows:

"All moneyed capital within the meaning of Section 5219 of the Revised Statutes of the United States shall be listed and assessed against the owner thereof at his place of business, and if a corporation at its principal place of business, at the same rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested."

The necessity for this definition and the exception in the statute first quoted is by reason of the aforesaid Section 5219 of the Revised Statutes of the United States, which, as amended in 42 Statutes at Large 1499 (12 U. S. C. A., Section 548), reads as follows:

"The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may tax said shares * * * provided the following conditions are complied with:

"1. *** (b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: *Provided,* That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

The turning point in this case is a construction of this section of the Federal statute, so far as it reads:

"Other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks."

We are furnished with very able and extended arguments on both sides of this case, in some instances going into the history of the Federal legislation and decisions on this question and various attempts that have been made by the United States Supreme Court to make a harmonious explanation of the meaning of this phase of the United States statutes; but, under the undisputed evidence, we do not feel called upon to discuss these intricate questions. Suffice to say that many cases have been decided in the state courts and in the United States Supreme Court on the question of what is moneyed capital, within the meaning of Section 5219 of the Revised Statutes of the United States, and also what is meant by the phrase, "coming into competition with the business of national banks." The latest expressions of the Supreme Court of the United States on this proposition are in *First Nat. Bank v. City of Hartford,*

273 U. S. 548 (71 L. Ed. 767) ; *Minnesota v. First Nat. Bank,* 273 U. S. 561 (71 L. Ed. 774) ; *Georgetown Nat. Bank v. McFarland,* 273 U. S. 568 (71 L. Ed. 779). In the first of these above cited cases, the court said, after discussing what is meant by the term "moneyed capital:"

"It is necessary also to ascertain the precise meaning to be given the statute as applied to the facts in hand, in order to determine whether the particular moneyed capital and the particular competition with which we are here concerned are moneyed capital and competition within the spirit and purpose of the statute. The question is thus a mixed one of law and fact, and in dealing with it we may review the facts, in order correctly to apply the law [citing many cases]."

If we assume that the property of the plaintiff is moneyed capital, the question then is, Is it such as is contemplated by the provisions of the above act, and does it come into competition with the business of national banks? We therefore turn to the evidence, to determine whether or not it justifies an affirmative answer to these two questions.

Officers from various national banks in the city of Des Moines were called to the witness stand on behalf of plaintiff, and explained their method of doing business and the handling of small loans. In each instance, however, the testimony of these officers shows that there is in fact no competition between these small loan companies and the national banks. Each has its place in the financial world, and the evidence shows that the small loan companies deal largely, if not entirely, with chattel mortgage securities, within the limits of their power of loaning. The rate of interest they are permitted to charge shows on its face that in reality there could be no competition between them and the national banks. Surely, if one were seeking a loan in an amount less than $300, and could secure the same from a national bank at the rate of 8 per cent interest, he would not seek a loan from one of these small loan companies, at 2 or 3 per cent interest per month. The small loan companies fill a necessity. In other words, to one who is compelled to seek these small loans, and who cannot secure the same from a national bank, his demand is met by these institutions, under the regulations of the statute. It is fairly deducible from the testimony and our general knowledge of such subjects that the handling

of these small loans, together with the troubles in connection therewith, is unprofitable, and results in loss to a bank that attempts to handle them at current rates of interest. It is for this very reason that these small loan companies are permitted to charge the high rates of interest authorized by the statute.

Our holding is that, under the testimony in the case, the business done by the small loan companies such as plaintiff is not a competitive business with national banks. The action of the district court in relation to this matter is correct.—*Affirmed.*

FAVILLE, DE GRAFF, MORLING, and WAGNER, JJ., concur.