THOMPSON, J.
 

 The defendant was charged in three separate informations filed in the district court of Bienville parish, with four separate violations of Act No. 7 passed at the Extra Session of the Legislature in 1928.
 

 In the first bill he is charged in the first count with loaning one Robert Iverson $15 for three weeks, for which he charged $1.50 interest; and in the second count with having discounted a note of Sidney Stewart for $10 due in 60 days, deducting $2 as discount-
 

 In the second bill he is charged with having made a loan to A. B. Rogers for $50 fox-six months, charging $5 interest thereon.
 

 The third bill charges that defendant made a loan of $12 to Will Mosely for 30 days,, charging $3.
 

 All of which loans, it is alleged, were made-by defendant while engaged in the making of loans of moixey in sums of $300 or less, charging a rate of interest greater than 8 per cent, per annum without having qualified to engage in such business, as required by said Act No. 7 of 1928, Extra Session.
 

 A motion to quash was filed by the defendant on the ground that the statute under which the prosecutions were had was unconstitutional for the several reasons set out in the motion. It was agreed that the motion should apply to all three of the cases, and they were consolidated for the trial of that motion.
 

 The judge sustained the motion to quash, held the statute to be unconstitutional on practically all of the grounds alleged, and discharged the defendant without day.
 

 The state has appealed.
 

 The motion to quash is quite lengthy, covering some eight typewritten pages and setting up substantially every ground of unconstitutionality that could be leveled at a legislative enactment.
 

 In their briefs counsel on both sides have discussed the objections to the statute very ably aixd exhaustively.
 

 In their zeal however counsel on the one side have charged that the statute is vicious legislation, in that while under the guise and pretense of the police power the statute in reality is a proposed purchase, by those who are financially able and are willing to pay
 
 *766
 
 the license, of immunity from the usury statutes of the state and an effort to sell and barter for a price the police power of the state.
 

 On the other hand, it is argued that the statute is humanitarian in purpose, and that the exorbitant and oppressive interest rates exacted of the small borrowers by the loan sharks had created such a deplorable situation in this state as not only justified, but demanded, legislation of the character of the statute in question.
 

 We are not presently concerned with the motives which prompted the lawmakers to pass the act, nor with the question as to ..whether the law is a good or bad law, a wise or an unwise law. The principle is so well settled that the Legislature is the sole judge of the wisdom and expediency of a statute, as well as the necessity for its passage, that it scarcely calls for citation of authority.
 

 The question and the only question the court is called on' to determine is whether the law was enacted in the manner required by the state Constitution and whether, if so enacted, it violates any of the provisions of the state and federal Constitutions.
 

 In order to avoid repetition as' far as possible, we shall consider the various objections to the statute as we state them and as near as possible in the order in which they are made in the motion to quash.
 

 The first objection is that the title of the act, as well as the body of the act, violates section 16, article 3 of the Constitution, which provides that every law enacted 'by the Legislature shall embrace but one object, and shall have a title indicative of such object.
 

 The title of the act is as follows:
 

 1.To provide for the licensing and regulation of the business of making loans in sums of $300 or less, secured or unsecured, at a greater rate of interest than 8 per centum per annum.
 

 2. Prescribing the maximum rate of interest and the maximum charges therefor.
 

 3. Regulating the assignment of wages and salaries, earned or to be earned, when given to a licensee thereunder as security for any such loan and providing that any such assignment, whether partial or otherwise, shall be valid and binding upon the employer without the consent of such employer.
 

 4. Declaring certain sales of salary and wages to be loans within the provisions of said act.
 

 5. Excluding from said act certain persons, copartnerships, and corporations.
 

 6.' Providing penalties for the violation of the act.
 

 7. Repealing all laws and parts of laws in conflict or inconsistent therewith.
 

 The contention in this connection is that the business of making of small loans under $300 and fixing the rate of interest thereon is a separate and distinct object from the one regulating the assignment of salaries and wages earned and to be earned and the sale of credits, goods, and things.
 

 There might be some force in the argument if the provision relating to assignment and sale of salaries and wages, etc., could be separated from and considered independently of the general intendment of the statute and its title.
 

 It goes without saying that there can be a business of money, lending and an independent business of buying up salaries and wages. But it is quite clear that, when fhe language of the title and of the act is considered as a whole, the two subjects, if they can be regarded as such, are directly related the one to the other, and that the provision relating to wages refers directly to such sales and assignments as are made in connection with or as security for the loan of money.
 

 
 *768
 
 For instance, in section 16 it is provided that the payment of $300 or less in money, credit, goods, or things in action as a consideration for any sale, assignment, or order for the' payment of wages, salary, commissions, or ’ other compensation for services, whether earned or to be earned, shall be deemed a loan within the provisions of the act secured by such assignment.
 

 And in section 17 it is provided that no assignment of or order for the payment of any salary, wages, etc., earned or to be earned, given to secure any such loan, shall be valid unless the amount of such loan is paid to the borrower simultaneously with its execution, and such assignment, when it shall be in favor of a license as herein provided for, shall be valid and binding upon any employer, etc.
 

 We can perceive of no legal reason why transactions relating to purchasing and discounting wages and salaries should not be included in an act regulating the business of loaning money, especially when such sales of salaries and wages are made in connection with the business attempted to be regulated by the statute under attack.
 

 It is argued also under the objection we are considering that section 18, which provides that no person, partnership, or corporation, except as authorized by the act,, shall directly or indirectly charge, contract for, or receive any interest, discount, or consideration greater than 8 per cent, per annum upon the loan, use, or forbearance of money, goods, or things in action, is not indicated in the title which also renders the said act null and void.
 

 The section quoted is within the purpose of the act, as declared in the title, to prohibit a greater rate of interest than S per cent, unless compliance is made with the act, whether it be for the loan of money or for extension or forbearance of such loan. The words “good or things in action,” evidently refer to such goods or things as may be given in connection with or as security for the loan, and to cases where the lender pretends to purchase property from his borrower, but in reality takes' the property as security and permits the latter to retain possession.
 

 But be that as it may, the section referred to could be read out of the act, and the act would still be enforceable if otherwise constitutional.
 

 Moreover the defendant is not charged with committing any act that would come under section 18; hence he is without interest to question the validity of said section.
 

 Our conclusion is that neither the title nor the act is amenable to the objection of containing more than one object, and that the title sufficiently indicates the one and only purpose of the act.
 

 What has been said is we think sufficient to meet the argument and objection made under paragraphs 1, 2, and 3, of defendant’s original brief.
 

 Objections that the act violates the Fourteenth Amendment to the Constitution of the United States are presented in different phases in paragraphs 4, 5, 6, 7, 8, and 9 of defendant’s brief and may be considered together.
 

 It may be said in this connection that the first section of Act No. 7 of the Extra Session of 1928 is general in its terms and applies equally to all persons, firms, or corporations who engage in or make a business of loaning money, in the amount of $300 or less, and prohibits all such persons, etc., from charging a higher rate of interest than 8 per cent, per annum, except as authorized by the statute, without a license, etc.
 

 Wo fail to discover any improper discrimination or any discrimination at all in this
 
 *770
 
 section of the statute. The statute merely attempts to regulate such business, fixes the rate of interest to be charged, and prohibits the charging of a greater rate than 8 peícent. per annum unless the lender qualifies under the act.
 

 The statute is uniform and makes no distinction between lenders who engage in the business of making loans in the limited sum stated, except such persons, etc., to which the statute is not intended to apply, as shall be considered later.
 

 The fact that there are persons who make small loans in connection with the operation of their own affairs in no manner affects the constitutionality of the statute.
 

 Such persons simply do not comp under the terms of the statute unless they engage in the business regulated by the statute.
 

 The act by its very language shows that it does not apply to merchants extending credit in money and goods to
 
 their
 
 customers. Nor does the statute apply to planters who make advances in money and goods to their tenants and share croppers. This class of persons cannot be said to be engaged in loaning money as a business. The lending or advancing of money under such circumstances is an incident to the mercantile business and planting operations.
 

 Nor are we able to conceive wherein the statute affects that class of people who farm and are forced to get credit from merchants. They still have the right, despite the statute, to obtain money and merchandise from their merchants. But it is argued by the defendant that, before this law, farmers could get money at 10 per cent, and pay cash for supplies and thus save as much as 10 per cent. But this could not be true if the planters had been forced to borrow from the loan sharks. The exorbitant rate charged by the defendant demonstrates the differential benefits of the statute in favor of that class of people who are driven by necessity at times to borrow from the usurious lenders.
 

 We are inclined to the view that the defendant can hardly be sincere in his solicitude for that class of people the statute was intended to protect, since he is now limited to -42 per cent, per annum if he meets the requirements of the statute, and 8 per cent, per annum if he does not.
 

 Whereas, prior to the statute, his interest profits on small loans ran as high as 300 per cent, per year; that is, if we are to take one of the loans he is prosecuted for making as a sample of the average.
 

 It is also contended that the statute is discriminative, in that it exempts United States banks, state banks, building and loan associations, and credit unions, and for this reason is violative of the federal Constitution.
 

 It is generally agreed that the licensing and regulation of any business which concerns and affects the public or general welfare of a state lies within the police power of the state, and that the Legislature of a state in the exercise of such power may make any reasonable classification which it deems necessary to the purpose intended to be attained by the legislation.
 

 The first attempt in this state to regulate the business of making small loans was at the regular session of the Legislature in 1928. The statute then passed was found defective and faulty by one of the courts of original jurisdiction. The ruling was acquiesced in by the Legislature, at least that body in the same year at the extra session enacted the law now under attack.
 

 This court has not therefore had occasion to inquire into the validity of such legislation. Many of the other states of the Union, however, have had such laws in operation for a number of years, and such statutes have
 
 *772
 
 been under attack before the courts of those states at the instance of those whose usurious profits on money lending have been reduced.
 

 The statutes appear to have been uniformly upheld as being reasonable, not discriminatory, not confiscatory, and within the legitimate exercise of the police power of the state.
 

 We shall only refer to a selected few of such cases.
 

 In the Mutual Loan Co. v. Martell, 222 U. S. 231, 32 S. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B, 529, the question presented was the validity under the Fourteenth Amendment .of a statute of Massachusetts which contained some provisions similar to the statute under consideration — one of which exempted banks and banking institutions and loan companies.
 

 ■ It was urged that the provision was discriminatory and denied the plaintiff the equal protection of the laws. The court said:
 

 “The legislation under review was directed at certain evils which had arisen, and the legislature, considering them and from whence they arose, might have thought or discernéd that they could not or would not arise from a greater freedom to the institutions mentioned than to individuals.”
 

 “The court said that the legislature might have decided that the dangers which the statute was intended to prevent would not exist in any considerable degree in loans made by institutions which were under the supervision of bank commissioners, and believed rightly that the business done by them would not need regulation in the interest of employees and employers.”
 

 But, said the court further, even if some degree of evil which the statute was intended to prevent could be ascribed to loans made by the exempted institutions, their exception would not make the law unconstitutional. Legislation may recognize degrees of evil without being arbitrary, unreasonable, or in conflict with the equal protective provision of the Fourteenth Amendment. See also Griffith v. Connecticut, 218 U. S. 563, 31 S. Ct. 132, 54 L. Ed. 1151.
 

 In the case of People v. Stokes, 281 Ill. 159, 118 N. E. 87, the Supreme Court of that state held:
 

 “The object of the law is not to regulate the rate of interest, but, on the contrary, is to regulate the business of making loans of small sums of money to wage-earners and salary people, and the provision as to the rate of interest is only inserted as one of the incidents of such regulation.”
 

 In the Welfare Loan Society v. City of Des Moines, 205 Iowa, 1400, 219 N. W. 534, in considering a similar statute dealing with small loan companies, the court held that there was no discrimination because there was no competition:
 

 “The rate of interest, they are permitted to charge shows on its face that in reality there could be no competition between them and the National Banks. Surely, if one was seeking a loan in an amount less than $300, and could secure the same from a National Bank at the rate of 8% he would not seek a loan from one of these small loan companies at 2 or 3% interest per month. The small loan companies fill a necessity.”
 

 It is stated that all of the several banks of Bienville make loans of $300 and less, but we are quite sure that none of said banks charge a rate of interest or discount as high as 42 per cent. per. annum, and, as was said in the case just referred to, if one was seeking a loan and could secure the same, he would get it from one of the banks of Bienville rather than from the defendant at the rate he has been charging.
 

 
 *774
 
 In Commonwealth v. Puder, 261 Pa. 129, 104 A. 505, the Supreme Court of Pennsylvania held a similar statute to be constitutional.
 

 “Statutes passed at various times by our state legislature recognized certain businesses to he in a separate class, and authorized as to them may be departures from the regular rate of interest fixed by the general law. For example, Building and Loan Associations are permitted to charge a premium on loans in excess of the legal rate.”
 

 There existed in the cases cited what we may assume the Legislature considered existed in this state — a necessity and a valid and sufficient reason for the regulation and classification of the business of loaning money in small sums, leaving out of such regulations banks, both national and state, and building and loan associations, as they- were already regulated by special laws.
 

 And in a case cited by the defendant, Wessell v. Timberlake, 95 Ohio St. 21, 116 N. E. 43, Ann. Cas. 1918B, 402, in which a prosecution was had for lending money over 8 per cent, without a license and under a statute which exempted or did not apply to banks whose business was supervised by a superintendent, the court held that the statute did not deprive the defendant of equal protection of the laws.
 

 Many other cases might be cited, but we do not consider it necessary, since there can be no doubt that in nearly every instance in which such a statute has been attacked it has been held constitutional.
 

 Nor is the statute under consideration a local or special law within the meaning of section 4, article 4, of the Constitution, which declares that the Legislature shall not pass any local or special law fixing the rate of interest.
 

 The statute is state-wide — applicable alike in all parts of the state — and it is general in its design and purpose and in no sense special, since it regulates a certain class of business and governs all who engage in such business.
 

 It is finally argued that the statute is in violation of the bill of rights, in that non-licensees under the act can be compelled to' give evidence against themselves and may be subjected to unreasonable searches or seizures under said statute.
 

 The defendant has not yet been called on to give evidence against himself, nor has any attempt been made to search his person or, his house. Hence he has no interest in raising that question in the present case.
 

 Our conclusion is that the statute is not unconstitutional for any of the reasons alleged by the defendant.
 

 The judgment of the court below in each of the cases is annulled and reversed, the motion to quash is overruled, and the eases are remanded to the lower court to be proceeded with according to law.
 

 BRUNOT, J., recused.
 

 O’NIELL, O. J., absent, takes no part.