Matthias, J.
These cases involve not only the appeal of Anna H. Morgan (cause No. 34311), but also the appeal of Talmadge Raley, Joseph Stern and Emmet Calvin Brown (cause No. 34361).
Since the questions raised in each are similar except in one significant respect, the following reasoning and conclusions, written with specific reference to and upon the facts of the Morgan appeal, apply with equal force to the appeal of Raley, Stern and Brown.
From the numerous errors assigned by appellant, the issues raised which are determinative of the case concern:
I. The jurisdiction of the trial court to hear the cause and impose sentence, dependent upon whether appellant appeared before a body which was legally constituted and of which she could be held in contempt and whether such body brought the action in an appropriate manner.
*533 II. Whether appellant by refusing “under the Fifth Amendment” to answer questions sufficiently indicated her intention to invoke whatever rule of privilege regarding self-incrimination to which she was entitled under the Constitution of Ohio.
III. Whether such rule of privilege, if sufficiently invoked, was in fact available to her in view of the Ohio immunity statute.
IV. The necessity of a direction to answer, after each refusal on the ground of self-incrimination, to sustain a finding of contempt.
These matters will be considered in the above order.
I
Appellant attacked the jurisdiction of the trial court to hear this cause and impose sentence, by attacking the indictment upon demurrer. The jurisdictional questions raised by the demurrer and saved by appellant’s assignment of errors to this court are essentially twofold:
A. Was the Ohio Un-American Activities Commission a legally constituted body having the power to compel the attendance and testimony of witnesses on April 1, 1952, which was after sine die adjournment of the General Assembly which-created it?
B. If the commission was a legally constituted body, was it a select committee of the General Assembly authorized to prefer charges of contempt under Section 12845, General Code (Section 2917.42, Revised Code), and if so was it precluded from using this remedy by the provisions of Section 76-32, General Code (Section 103.35, Revised Code)?
A.
The power of the General Assembly to create investigative bodies is a necessary incident to its power to legislate and to the correlative power to secure sufficient information to enable it to legislate intelligently and independently.
This power is granted, as follows, to the General Assembly by Section 8, Article II of the Constitution of Ohio:
“Each bouse * * * shall have all powers, necessary to provide for its safety and the undisturbed transaction of its business, and to obtain, through committees or otherwise, informa *534 tion affecting legislative action under consideration or in contemplation, * * * and to that end to enforce the attendance and testimony of witnesses, and the production of books and papers. ’ ’
It is seen that the General Assembly is granted by the people of Ohio the power to obtain information affecting legislation under consideration or in contemplation by the use of committees or othenoise.
This court considered an example of a method ‘ ‘ otherwise ’ ’ than “through committees” of obtaining information for legislative purposes in the case of State, ex rel. Herbert, v. Ferguson, Aud., 142 Ohio St., 496, 52 N. E. (2d), 980.
That case concerned the constitutionality of the Post-war Program Commission which was established by a special act of the 95th General Assembly. It was composed of a specified number of members of the General Assembly, impersonally described, and certain others who were not members of the General Assembly, and its purpose was essentially to make investigations and to report its recommendations based thereon to the Governor and the General Assembly on or before January 15, 1945, which was after the next General Assembly, the 96th, convened.
The court, in the fifth paragraph of the syllabus, found:
“A commission composed of members of the General Assembly and others to make investigation of and recommendations on important matters of legislative concern, is within the creative powers of the General Assembly under Section 8, Article II of the Constitution, authorizing that body to obtain through committees or otherwise information affecting prospective legislation.”
Thus, this court has recognized that Section 8, Article II, empowers the General Assembly to create a commission for investigative purposes which shall function after sine die adjournment and make recommendations to the next General Assembly. '
We hereby approve that finding. See, also, 49 American Jurisprudence, 258, States, Territories, and Dependencies, Section 41, aiid cases cited.
It is important to note here that such a commission, when *535 recognized as authorized by Section 8, Article II, may be given the means of exercising the correlative power, expressly granted in this section of the Constitution, to “enforce the attendance and testimony of witnesses, and the production of boobs and papers.”
It is clear, then, that the General Assembly has the power to create an investigative body which is authorized to function after sine die adjournment, and that it validly exercised this power in creating the Ohio Un-American Activities Commission by statute.
B.
Appellant was indicted, tried and convicted for violating the provisions of Section 12845, General Code (Section 2917.42, Revised Code), which is as follows:
“Whoever, having been subpoenaed or ordered to appear before either branch of the General Assembly, or before a standing or select committee of the General Assembly, or either branch thereof, fails so to do, or, having appeared, refuses to answer a question pertinent to the matter under inquiry, or to produce, upon reasonable notice, books, papers or documents in his possession or under his control, pertinent thereto, shall be fined not less than one hundred dollars nor more than five thousand dollars.”
Whether a body created by the General Assembly is a select committee within the meaning of this section is determined by the purpose and functions for which such body was created as indicated in the resolution or act of the General Assembly establishing it. The name of such body is not controlling in the absence of a specific definition thereof in the creating statute or resolution.
In considering the constitutionality of the act creating the Post-war Program Commission in the Ferguson case, supra, this court discussed the function of the body created by the General Assembly.
Determining that the General Assembly had not, by delegating sovereign powers to the program commission, created civil offices which members of that Legislature would be forbidden to hold by virtue of Section 19, Article II of the Constitution, which prohibits the appointment of members of the Gen *536 eral Assembly to any civil office created during their terms of office, the court said:
“The act involved establishes a commission, the described functions of which, for the most part, consist of finding facts, assisting in the formulation of plans and the making of recommendations. Surely, this cannot be said to constitute the exercise of sovereign powers.”
Similarly, the act with which we are concerned established a commission, the described functions of which consist of finding facts and making recommendations.
We have described the Post-war Program Commission as an example of the use of the legislative investigative powers conferred by Section 8, Article II, which method is “otherwise” than “through committees.”
Since the body created by the act establishing the Post-war Program Commission included members other than legislators, it could not definitively be called a “committee” within the purview of the use of that word in Section 8, Article II, which must be h,eld to refer only to committees composed solely of members of the General Assembly.
Where, however, a body is created by the General Assembly, by statute, which is composed solely of members of the General Assembly, impersonally described, and whose duties are to investigate subversive activities and “to recommend such additional legislation or revision of existing laws as may seem advisable.and necessary,” it is a “committee” of the General Assembly under Section 8, Article II of the Constitution, and is a select committee thereof within the purview of Section 12845, General Code (Section 2917.42, Revised Code), having the power to cause the prosecution of a witness for contempt under that section.
Appellant contends that, even though this be so, Section 76-32, General Code (Section 103.35, Revised Code), provides an exclusive remedy to be used by this particular body, thus precluding the application of Section 12845, supra.
Section 76-32, General Code (Section 103.35, Revised Code), provides, in part:
“* * * on the refusal of any person or officer to testify to *537 any matters regarding which he may be lawfully interrogated * * * the chairman may be authorized by a majority of the members sitting at the time the alleged offense is committed, to cause a proceeding for contempt to be filed and prosecuted in the Common Pleas Court of any county under the provisions of Sections 12138 to 12146, inclusive, of the General Code.”
The General Assembly chose the phrase, “may be authorized,” rather than the phrase, “shall be authorized” or “must be authorized,” in authorizing proceedings under Sections 12138 to 12146, General Code. It is presumed it had a reason- for so choosing.
“The intention of the Legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language thereof. * * * a provision couched in permissive terms is generally regarded as directory or discretionary. This is true of the word, ‘may’ * 50 American Jurisprudence, 49, Statutes, Section 28, and cases cited.
It is seen that this statute by its own terms simply gives the commission a procedure for instituting a contempt proceeding under Sections 12137 to 12146, General Code, which it may use at its discretion.
The fact that the Legislature has endowed a particular committee with a permissive procedure for punishing witnesses for contempt, which is other than the procedure it has given all like bodies, neither excludes the operation of such usual procedure nor precludes its use by any standing or select committee.
However different it might be if the permissive statute were mandatory, the fact remains, from what has been said, that the Ohio Un-American Activities Commission had the power to cause appellant to be indicted and prosecuted under the provisions of Section 12845, General Code (Section 2917.42, Revised Code).
Since the commission, in this case, chose to institute proceedings under a statute providing other than the permissive procedure given it, the validity of such permissive procedure is not here before the court. The procedure chosen is unassailable.
*538 II
We must consider next whether the language used by appellant in giving her reason for refusing to answer was sufficient to invoke any rule of privilege arising from the provisions guaranteeing protection from compulsory self-incrimination embodied in the Constitution of Ohio.
The record discloses that at the time of the hearing appellant, after having been interrogated and having stated her name, refused to answer, in the following'words, the question, “Where do you reside, Mrs. Morgan?”:
“I regret that I cannot answer your question under the Fifth Amendment of the Constitution, because to do so would give your committee an opportunity to incriminate me.”
After this she continued to refuse, “under the Fifth Amendment,” to answer questions.
The state argues that by the use of this terminology the witness failed to invoke the only constitutional protection pertaining to self-incrimination available to her while appearing before a committee of the General Assembly, to wit, that provided by Section 10, Article I of the Constitution of Ohio.
This argument is based upon the well known doctrine which this court restated in the case of State v. Lindway, 131 Ohio St., 166, 2 N. E. (2d), 490, as follows:
“The * * * Fifth * * * [Amendment] to the Constitution of the United States, prohibiting * * * compulsory self-incrimination * * * [is] directed exclusively against the activities of the federal government and * * * [has] no application to the states and their agencies.” See, also, Feldman v. United States, 322 U. S., 487, 490, 88 L. Ed., 1408, 64 S. Ct., 1082, 154 A. L. R., 982, and cases therein cited.
However, in the case of Quinn v. United States, 349 U. S., 155, 99 L. Ed., 964, 75 S. Ct., 668, the Supreme Court of the United States, considering whether a witness called before a subcommittee of the Committee on Un-American Activities of the House of Representatives, who refused to answer, basing his refusal upon the refusal by a former witness to the effect óf a declination to answer under the “First and Fifth Amendments ’ ’ and the ‘ ‘ First Amendment to the Constitution, supplemented by the Fifth Amendment,” had sufficiently claimed the privilege, said:
*539 “It is agreed by all -that a claim of the privilege does not require any special combination of words. * * * If an objection to a question is made in any language that a committee may reasonably be expected to understand as an attempt to invoke the privilege, it must be respected both by the committee and by a court * * *.”
We are in complete accord with that conclusion' and with the reasoning which supports it and ■ conclude that a witness appearing before an investigating committee of a state Legislature, who objects to a question, the objection being in language which the committee may be reasonably expected to understand as an attempt to invoke the rule of privilege against self-incrimination, whether it be by an appeal to the federal Constitution or to a state Constitution, has thereby invoked any protection against self-incrimination to which he may be entitled under either instrument.
It follows that appellant sufficiently indicated her invocation of any rule of privilege to which she was entitled under the protection against self-incrimination afforded her by Section 10, Article I of the Constitution of Ohio.
Ill
The above finding leads us to the next question raised by this appeal. We must decide whether the immunity granted a witness appearing before a select committee of the General Assembly by Section 60, General Code (Section 101.44, Bevised Code), is so full and sufficient as to supplant the protection provided by the rule that testimony is legally privileged where it might subsequently be used against the witness in a criminal prosecution, which rule is based on the provision of Section 10, Article 1 of the Constitution of Ohio, providing that “no person shall be compelled, in any criminal case, to be a witness against himself. ’ ’
Section 60, General Code (Section 101.44, Bevised Code), provides, in part:
“* # * the testimony of a witness examined before a committee or subcommittee shall not be used as evidence in a criminal proceeding against him, nor shall a person be prosecuted or subjected to a penalty or forfeiture for or on account of a transaction, matter or thing, concerning which he so testifies * * (Emphasis ours.)
*540 Although the provisions of this section of the Code have never been construed by this court, the case of Mouser v. Public Utilities Commission, 124 Ohio St., 425, 179 N. E., 133, considered the provisions of Section 553, General Code, which are similar in wording and intent. The hearings in the Mouser case were held by the Public Utilities Commission of Ohio.
Section 553 provided, in part:
“A person shall not be excused from testifying * * * in a proceeding based upon or growing out of violation of the provisions of this chapter, on the ground that the testimony * * * may tend to. incriminate him * * * but no person having so testified shall be prosecuted or subjected to a penalty or forfeiture for, or on' account of, any transaction, matter or thing concerning which he may have testified * * (Emphasis ours.)
The similarity of the italicized portions of these two statutes is obvious.
In the Mouser case, this court, in construing the immunity provisions of the Public Utilities Act, said:
“Section 553, General Code, confers upon such witness full and complete immunity by preventing prosecution or subjection to penalties against him ‘on account of any transaction, matter or thing concerning which he may have testified.’ Since that section affords the witness such absolute immunity, it deprives him of his constitutional right to refuse to answer; and for so refusing he may be punished for contempt.”
We find this construction to apply in like manner to the immunity statute here under consideration.
Appellant argues that she is afraid of federal prosecution, and that., since the state cannot provide immunity from such prosecution, the state immunity afforded her does not give sufficiently comprehensive protection to deprive her of her constitutional right to refuse to answer.
The question is thus refined to whether a state immunity statute, which is admittedly sufficient to preclude prosecution under the laws of the state but which does not afford immunity from federal prosecution, supplants the right of a witness, based upon the protection guaranteed by the state Constitution, to refuse to answer on the ground of self-incrimination.
In the case of United States v. Murdock, 284 U. S., 141, 76 *541 L. Ed., 210, 52 S. Ct., 63, 82 A. L. R., 1376, the Supreme Court of the United States said:
“This court has held that immunity against state prosecution is not essential to the validity of federal statutes declaring that a witness shall not be excused from giving evidence on the ground that it will incriminate him, and also that the lack of state poiver to give witnesses protection against federal prosecution does not defeat a state immunity statute. The principle established is that full and complete immunity against prosecution by the government compelling the witness to anstoer is equivalent to the protection furnished by the rule against com-, pulsory self-incrimination.” (Emphasis ours.)
In like manner the Supreme Court later said:
“The immunity from prosecution, like the privilege which it supplants, pertains to a prosecution in the same jurisdiction.” Feldman v. United States, 322 U. S., 487, 493, 88 L. Ed., 1408, 64 S. Ct., 1082, 154 A. L. R., 982.
And in the Feldman case Mr. Justice Frankfurter, speaking for the majority of the court, quoted Chief Justice Taney in Ableman v. Booth, 21 How., 506, 516, 16 L. Ed., 169, as follows:
“ ‘The powers of the general government, and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. And the sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a state judge of a state court, as if the line of division was traced by landmarks and monuments visible to the eye. ’ ’ ’
Thus, the state and national governments are held by the Supreme Court of the United States to be separate sovereign-ties, and protection by one in granting sufficient immunity within its domain is sufficient to impose upon the witness the duty of testifying without invoking the privilege of self-incrimination, without regard to protection against the other within its separate domain.
Those decisions of the Supreme Court of the United States were occasioned by an attempted use of the rule protecting the individual from being forced to give testimony which might incriminate him. The rule of privilege with which they dealt is *542 based upon the protection afforded the individual by the Fifth Amendment to the Constitution of the United States, which says': • ' •
“No person * * * shall be compelled in any criminal case to be a witness against himself * * *.”
We have here under consideration an attempted use of the samé rule except that in this instance the rule of privilege is based upon the protection afforded by Section 10, Article I of the Constitution of Ohio, which says:
“No person shall be compelled, in any criminal case, to be a-witness against himself.”
“Where the provisions of the national and state Constitutions on any subject are identical, the state courts usually acquiesce'in the decisions of the national courts interpreting and applying such provisions * * *.” 11 American Jurisprudence, 741, Constitutional Law, Section 105, and cases cited.
We find no valid reason for disagreeing with the interpretations and applications by the Supreme Court of the United States, as hereinbefore set out, and conclude that the- inability of the state of Ohio to provide immunity from possible federal prosecution does not defeat the immunity statute here under consideration, which grants complete immunity from prosecution by the state.
It follows that the immunity from prosecution by the state of Ohio concerning any of the matters to which appellant might have testified afforded her as much protection from self-incrimination as the Constitution of Ohio guarantees, and her refusal to answer on the basis that she might incriminate herself was an attempted invocation of a rule of privilege which, by virtue of the immunity granted, was unavailable to her.
IV
Appellant argues that she could not have been guilty of contempt before the Ohio Un-American Activities Commission in view of the fact that the committee did not, upon each refusal to answer, specifically direct her to answer, and that such direction was necessary in order to show contumaciousness on her part.
The question presented is whether a witness appearing before an investigating committee of the Ceneral Assembly, who *543 refuses to answer a question on the ground that to do so would be self -incriminating, must be directed, after such refusal, to answer in order to be found guilty of contempt by a violation of Section 12845, General Code (Section 2917.42, Revised Code), which is a criminal statute.
This section, set out in full supra, reads in part :
“Whoever * # * refuses to answer a question pertinent to the matter under inquiry * ® * shall be fined * * *.”
The term, willful, or, deliberate, does not appear in the statute. The only basis for objection to a question propounded by the commission to be seen in the statute is the provision that the question must be “pertinent to the matter under inquiry.” Nowhere in the statute can there be read or inferred a requirement that a witness must be directed to answer a question, upon his refusal, to so do on the ground of self-incrimination, in order to show a violation of the statute.
In the case of State v. Huffman, 131 Ohio St., 27, 1 N. E. (2d), 313, this court, in the first paragraph of the syllabus, held:
“We have no common-law crimes in Ohio; neither do we have common-law criminal procedure. Consequently, if' a statute defining an offense in Ohio provides that it must be committed with a particular intent, such intent becomes a material element of the offense and must be alleged in the indictment and proved on trial. On the contrary, if a statute defining an offense is silent on the question of intent, it is not necessary to allege and prove an intent to commit the offense.” (Emphasis added.) See, also, State v. McLean, 121 N. C., 589, 28 S. E., 140, 42 L. R. A, 721; and State v. Zichfeld, 23 Nev., 304.
Section 60, General Code, grants immunity to all witnesses appearing before “a committee or subcommittee” of the General Assembly, or of either house thereof, “except as to a person who, in writing, requests permission to appear” or who “in writing waives the rights, privileges and immunities granted by this section.”
Thus, the immunity granted by this section enveloped appellant like a cloak the instant she was sworn, and required not only an affirmative act on her part but an affirmative act in writing in order to be divested.
*544 The basic reason for a direction to answer is to inform the witness that the committee is overrnling the objection to the question on the ground of privilege against self-incrimination; that it, in effect, refuses the witness’ claim that to answer would tend to incriminate him.
This, of course, presupposes a right of the witness to claim the privilege in the first instance. Here, however, in view of Section 60, there is no need for such protection, which the witness is presumed to know, as the witness is presumed to know that he may be prosecuted, however unsuccessfully, under Section 12845, for any refusal to answer. The witness who attempts to invoke the privilege cannot later claim that he was uncertain as to his rights. Appellant was “bound rightly to construe the statute. * * * [Her] mistaken view of the law is no defense.” Sinclair v. United States, 279 U. S., 263, 299, 73 L. Ed., 692, 49 S. Ct., 268.
Thus, the witness knew or was presumed to know that under the statute her invocation of the rule of privilege against self-incrimination was a useless act under the law, since such rule of privilege had been supplanted by a statute affording her sufficient immunity from prosecution to satisfy the protection against seif-incrimination guaranteed by the Constitution. Her mere refusal to answer on such a basis constituted contempt, and the interpolation of such a frivolous objection imposed no duty upon the commission to inform her of what she already knew — that she had no right to refuse to answer on such grounds.
It is seen that a direction to answer in such a case would serve no substantial purpose. Although it may be true that the commission could have informed appellant that she was in contempt and subject to prosecution which might be avoided, at the sound discretion of the commission, if she chose to answer, an answer even at that point would, upon a subsequent trial, go only to show a mitigation of the contempt already committed.
It is axiomatic that neither ignorance of the law nor a mistake in its interpretation affords a valid defense in a criminal prosecution. A witness cannot be heard to say in one breath that he knows enough of the law to claim the privilege against self-incrimination and in the next breath that he knows nothing of the immunity statute, or that he has misconstrued it.
*545 Appellant argues that she refused to answer because she felt she was not afforded such full and complete immunity as to deprive her of the right to refuse on the ground of self-incrimination. Regardless of whether this be interpreted to show a willful and contumacious refusal to answer, it certainly indicates a deliberate refusal to answer under a mistaken interpretation of the law.
It is argued also that the Quinn case, supra, is, in effect, a mandate by the Supreme Court of the United States to all legislative bodies, both national and state, that they must specifically direct a witness to answer before he may be cited for contempt, and a directive to all judicial tribunals in the nation that such must be the case before a witness may be convicted of contempt.
An examination of the reasoning behind that decision compared with the reasoning behind the decisions in the instant cases shows such argument to be fallacious.
We are here interpreting the effect of a state immunity statute (Section 60, General Code) providing not only that testimony given by a witness shall not be used in a subsequent criminal proceeding but also that the witness shall not “be prosecuted or subjected to a penalty or forfeiture for or on account of a transaction, matter or thing, concerning which he testifies”; and we are determining for the first time in regard to this particular statute that such protection is sufficient to supplant the rule of privilege against self-incrimination, i. e., that both the statute and the rule stem from the guaranty of protection from self-incrimination afforded by Section 10, Article I of the Constitution of Ohio, and that the scope of protection afforded by the former is sufficient to supplant the protection afforded by the latter.
This, however, is not the case with the federal immunity statute, Section 3486, Title 18, U. S. Code, which was applicable to the defendant in the Quinn case.
The first federal statute regarding the immunity of a congressional witness, Section 859, Revised Statutes, was enacted in 1857 and was almost identical in wording and effect with the first federal immunity statute regarding witnesses appearing before federal judicial tribunals, Section 860, Revised Statutes, which was enacted in 1868.
*546 In 1892, the Supreme Court of the United States; in the case of Counselman v. Hitchcock, 142 U. S., 547, 35 L. Ed., 1110, 12 S. Ct., 195, held that Section 860 did not afford sufficient protection to supplant the right of a witness to refuse to answer on the ground of self-incrimination. See United States v. Bryan, 339 U. S., 323, 335 et seg., 94 L. Ed., 884, 70 S. Ct., 724, for a iucid history of Section 860 and its purpose and effect.
The conclusions set out in the Counsebnan case have never been overruled, and in the Quinn case the Supreme Court said:
‘ ‘ Clearly not every refusal to answer a question propounded by a congressional committee subjects a witness to prosecution under Section 192. Thus if he raises an objection to a certain question — for example, lack of pertinency or the privilege against self-incrimination — the committee may sustain the objection and abandon the question, even though the objection might actually be without merit. ’ ’
It is important to note here that the federal immunity statute which was applicable to the defendant in the Quinn case, in it's original as well as its present form, provides a witness only with protection from the use of his testimony against him and not, as is provided by the Ohio statute, with protection from prosecution for matters concerning which he testified. For an interpretation of a federal statute very similar in wording to the Ohio statute, which is in complete accord with the conclusions herein reached, see Brown v. Walker, 161 U. S., 591, 40 L. Ed., 819, 16 S. Ct., 644. See, also, Hale v. Henkel, 201 U. S., 43, 66 et seq., 50 L. Ed., 652, 26 S. Ct., 370.
The point derived from the above is that it has been recognized for approximately 63 years that a witness approaches a hearing before a congressional body with a recognized and legitimate right to refuse to answer on the ground of self-incrimination.
It is apparent that, once a legitimate right to refuse to answer on the ground of self-incrimination is recognized, a body of decisions should arise as to whether such refusal is founded upon sufficient reason (Arndstein v. McCarthy, Marshal, 254 U. S., 71, 72, 65 L. Ed., 138, 41 S. Ct., 26; United States v. White, 322 U. S., 694, 88 L. Ed., 1542, 64 S. Ct., 1248, 152 A. L. R., 1202; Hoffman v. United States, 341 U. S., 479, 95 L. Ed., 1118, 71 S. *547 Ct., 814; United States v. Burr, 25 Fed. Cas., 40, No. 14, 692e; Blau v. United States, 340 U. S., 159, 95 L. Ed., 170, 71 S. Ct., 223), whether the witness in fact invokes the rule of privilege (Smith v. United States, 337 U. S., 137, 93 L. Ed., 1264, 69 S. Ct., 1000; Quinn v. United States, supra; Bart v. United States, 349 U. S., 219, 99 L. Ed., 602, 75 S. Ct., 712; Emspack v. United States, 349 U. S., 190, 99 L. Ed., 585, 75 S. Ct., 687) and whether the witness’s refusal to answer is contumacious, i. e., whether he is made aware that, although his right to refuse to answer is recognized, his reason in the particular instance is ruled invalid and his claim of privilege rejected (In re Chapman, 166 U. S., 661, 41 L. Ed., 1154, 17 S. Ct., 677; McGrain v. Dougherty, 273 U. S., 135, 71 L. Ed., 580, 47 S. Ct., 319; Sinclair v. United States, 279 U. S., 263, 73 L. Ed., 692, 49 S. Ct., 268; and the Quinn, Bart and Emspack cases, supra).
Imposing as is the body of decisions regarding these questions, it must be remembered that each is based fundamentally upon the premise that, since sufficient immunity is not afforded the witness by the federal statute, he has a legitimate right to assert the privilege against self-incrimination. It must be remembered also that this basic premise results from the decision in Counselman v. Hitchcock, supra, which was an interpretation by the Supreme Court of the United States of the effect of a federal statute upon a federal constitutional provision.
The fact that the Supreme Court of the United States has construed the effect of a federal statute upon a portion of the federal Constitution in a certain manner, however, in no way precludes the highest tribunal of a state from construing the effect of a similar but not identical state statute (as hereinbefore set out) upon a similar provision of the state Constitution, particularly where it is well recognized t-hat the operation of such constitutional provisions is directed exclusively and individually to the federal and the state governments, respectively.
“We [the Supreme Court of the United States] have nothing to do with the interpretation of the Constitution of the state and the conformity of the enactment of the Assembly to that Constitution; those questions are for the consideration of the courts of the state, and their decision of them is final. The Fifth Amendment to the Constitution of the United States is *548 not restrictive of state, but only of national, action.” Hunter v. City of Pittsburgh, 207 U. S., 161, 176, 52 L. Ed., 151, 28 S. Ct., 40. See, also, Missouri v. Dockery, 191 U. S., 165, 48 L. Ed., 133, 24 S. Ct., 53, 63 L. R. A., 571; Merchants’ & Manufacturers’ Bank v. Pennsylvania, 167 U. S., 461, 42 L. Ed., 236, 17 S. Ct., 829; and Gabrielli, a Minor, v. Knickerbocker, 12 Cal. (2d), 85, 82 P. (2d), 391.
It follows that the Quinn case, admittedly based upon the assumption that the defendant therein had a right to refuse to give self-incriminating answers, is not controlling in any manner in the instant cases.
The conclusions herein are based upon a source of reasoning which is separate and distinct from that in the Quinn case, to wit, an interpretation of the effect of a state statute upon a provision of a state Constitution, and when we conclude that, because of Section 60, General Code, appellant approached the hearing before the Ohio Un-American Activities Commission without a legitimate right to refuse to answer on the ground of self-incrimination, and that her refusal to answer on that ground constituted a violation of Section 12845, General Code, without further indication of criminal intent, we do not reach that point at which it becomes important to consider whether the commission overtly ruled upon an invalid assertion of the privilege, and, thus, the Quinn case is not only not controlling in this instance but it is inapplicable to the facts as well.
It is argued also that the chairman of the commission in some way contributed to appellant’s misfortune by stating to her:
“Mrs. Morgan, I should like to advise you under the Fifth Amendment, you are permitted to refuse to answer questions that might tend to incriminate you.
' “Mrs. Morgan: Yes.
“Chairman Renner: But you are not permitted to refuse to answer questions simply for your own convenience. Counsel may proceed.”
Although the chairman obviously misstated the law, the question is whether such misstatement affected the alleged violation by Mrs. Morgan of Section 12845, General Code.
In order to find that the chairman’s statement affected her *549 conviction, we must necessarily find that it in some way affected appellant’s behavior at the hearing. A thorough search of the record fails to disclose that this was the case.
Appellant indicated, in a prepared statement which she presented to the commission prior to the hearing, that she intended to “claim the protection of the Fifth Amendment and remain silent before this committee, ’ ’ and she refused to answer on that ground the 12 questions propounded to her prior to the chairman’s statement. Her subsequent refusals to answer are made in the same words and manner as her prior refusals.
It is also interesting and significant to note that the chairman, at another point in the Morgan hearing, said, “Mrs. Morgan, are you aware of the fact that your failure to answer questions — some questions of this commission, might also tend to put you in an embarrassing situationV’
The only hypothesis consistent with the record of this hearing is that Mrs. Morgan was well aware of what she considered to be the law and her rights thereunder, and that such statement neither mislead her nor induced her to act in any manner other than that which she deliberately chose.
The state advances the theory that a direction by the commission to answer was unnecessary since a statement read by appellant just prior to being sworn, and later introduced into the record of the hearing, is alone sufficient to establish the contumacious intent in her refusal to answer. In the light of what we have said, however, concerning the necessity of a direction to answer, it is neither necessary to consider this premise nor to give such statement, which is highly abusive and vitriolic, the dignity of perpetuation in this opinion.
Thus, since the immunity statute precluded appellant’s right to claim the rule of privilege against self-incrimination, and Sectioh 12845, General Code (Section 2917.42, Revised Code), makes a refusal to answer questions pertinent to the matter under inquiry a misdemeanor, appellant’s refusal to answer under the claim of the rule of privilege constituted a violation, and as a direction thereafter could serve no substantial purpose it was unnecessary.
We are all familiar with the excesses and abuses which led to the formulation of the common-law rule, the substance of *550 which, has been incorporated into the Constitution of the United States and the Constitutions of the various states, granting each individual the right to refrain from giving testimony which may be used against him in a criminal prosecution. To expound further on this maxim and the necessity therefor would be to unnecessarily reiterate that which has already been well said many times.
This rule of privilege is a personal right whose sole1 purpose is to protect the individual from subjection to pressure, physical or mental, to give evidence or testimony upon which may be based his subsequent punishment or forfeiture. The belief is universal in civilized countries that it is reprehensible for an individual to be required by any authority to convict himself through testimony or evidence pried from him against his will.
It must be remembered, however, that, although the people who founded our government did withhold from it certain personal privileges, justifiably, in the light of the lessons history teaches, such as the privilege against self-incrimination, they also pledged to it certain duties. Just a few of the duties owed the governments, both state and national, by each individual, who is an integral part thereof, are the duties of support by taxes, obedience to laws, defense in time of war and stress and service upon juries.
A breach of any of these duties is punishable by law on the theory that, ultimately, since the duties are owed by all, a breach by one constitutes an offense against the rest. It is thus that in many jurisdictions criminal actions are brought in the name of “the people” of the prosecuting political entity.
In like manner each citizen owes a duty to the legislative branch of the government to give it the benefit of any knowledge or facts of which he may be possessed in order that it may write the laws with as much background information and intelligence as possible.
Of course, even this duty is not superior to the protection from self-incrimination, which must for good reason remain inviolate. But when the reason for the rule, i. e., the possibility of a prosecution or penalty imposed by the inquiring sovereign and based upon coerced testimony, is satisfied by a statutory *551 grant of immunity which is as full and complete as is necessary under the law, the legislative branch of the government is thereby enabled to demand of the individual the performance of this duty free of a refusal to answer on the ground of self-incrimination, and may provide a penalty for the breach of such duty.
The argument that an immunity statute coupled with a statutory demand for pertinent testimony, regardless of whether it might, in the absence of immunity, be of an incriminating character, in effect amends the Constitution is without merit.
The fact is that the immunity legislation and the demand for testimony cannot amend and do not violate the Constitution nor do they abridge the rule of privilege arising therefrom. A statutory grant of immunity which is full and sufficient simply provides a witness by statute the protection against self-incrimination which the Constitution guarantees.
The Constitution and the rule of privilege merely safeguard the individual from being forced to give testimony or evidence which may be used against him in a criminal prosecution. Section 60 not only provides that the testimony given by a witness shall not be used as evidence in a criminal proceeding against him, but the statute provides further that the witness shall not be prosecuted or subjected to a penalty or forfeiture on account of a transaction, matter or thing concerning tvhich he testifies or produces evidence.
It is seen that under such circumstances the state has seen fit to forfeit its right to prosecute a witness for his part in any criminal activity of which it becomes aware by virtue of testimony given by the witness before a legislative body in search of information. Thus, the witness is given more protection by immunity than is afforded him by the Constitution and the rule of privilege. Surely under these circumstances it is not improper for the government to call upon its citizens to perform an inherent duty free of a limitation the cause for which has been statutorily removed.
It is readily seen that if the government should decide to withdraw its grant of immunity to the witness it would instantly forfeit its right to testimony or evidence which might tend to incriminate him. There would then be no protection by immunity equal to the protection by privilege, and the constitu *552 tional rule of privilege would obtain in its full force and effect.
Where there is immunity granted, however, which is so full and sufficient as to supplant the protection afforded by the rule of privilege, the refusal of a witness to give pertinent testimony upon the ground of privilege can be considered no more than an attempt to block the legislative effort and the refusal to perform a duty owed the government by virtue of citizenship; and a breach of such duty may be punished as other breaches of duty owed the government.
In conclusion, we find:
I. It was within the power granted the General Assembly by Section 8, Article II of the Constitution of Ohio, authorizing that body to obtain through committees or otherwise information affecting legislative action under consideration or in contemplation, to create the Ohio.Un-American Activities Commission and to authorize it to function after sine die adjournment and to report to the following General Assembly; and, since the function and structure of such a body rather than its name determine its character, the fact that this commission had the function and structure of a select committee of the General Assembly rendered it, in fact, a “select committee” thereof entitled to all the rights and prerogatives of select committees. One of such prerogatives is the right to bring a contempt action under the provisions of Section 12845, General Code (Section 2917.42, Revised Code), unless the committee is specifically precluded from doing so by the Legislature. No such preclusion is evident in the permissive provisions of Section 76-32, General Code (Section 103.35, Revised Code), which merely provides this particular commission with an alternative method of punishing for contempt.
II. A witness appearing before a committee of the General Assembly, who objects to a propounded question, the objection being in language which the committee might reasonably be expected to understand as an attempt to invoke the rule of privilege against self-incrimination, whether it be by a reference to the Constitution of the United States or the Constitution of Ohio, thereby invokes any privilege to which he may be entitled under either, and appellant, by refusing “under the Fifth Amendment” to answer questions, did in fact invoke any *553 privilege to which she would ordinarily be entitled under the Constitution of Ohio.
III. Appellant’s invoking of the rule of privilege in this case, however, was ineffective, since the immunity granted by Section 60, General Code (Section 101.44, Revised Code), is so full and complete as to satisfy the protection against self-incrimination guaranteed by the Constitution of Ohio and to supplant the privilege arising therefrom, and it imposed upon appellant the duty to give her testimony free of a refusal based upon this rule of privilege.
IV. A direction to answer, after appellant’s refusal upon the ground of self-incrimination, was unnecessary since the immunity granted her precluded the possibility of justifying a refusal on this ground. The commission asked questions which were pertinent, and the refusal alone of the witness to answer on the ground of self-incrimination constituted contempt.
The issue apparent in cause No. 34361 which is not involved in the Morgan appeal is whether the Ohio Un-American Activities Commission was unconstitutional in that the General Assembly had delegated to it powers and functions belonging exclusively to the judiciary of Ohio by virtue of Section 1, Article IV of the Constitution of Ohio.
At the outset it is obvious from reading those sections of the General Code relating to the Un-American Activities Commission that there was absolutely no attempt to give the commission any direct judicial authority whatsoever.
Section 76-32, General Code (Section 103.35, Revised Code), in effect specifies that any of the acts described in Section 12137, General Code (Section 2705.02, Revised Code), which may be generally described as statutorily defined contempts of court, shall be contempts of the legislative body and punishable at the behest of the commission under the procedure set out in the following sections, i. e., Sections 12138 to 12146, General Code (Sections 2705.03 to 2705.09, Revised Code).
The defendants were found guilty of violations of subdivision 3 of Section 12137. This section is clearly severable and reads as follows, so far as it affects cause No. 34361:
“A person guilty of any of the following acts may be punished as for a contempt:
a * * *
*554 “3. A failure to obey a subpoena duly served, or a refusal to be sworn, or to answer as a witness, ivhen laivfully required.” (Emphasis ours.) .
It must be noted that, since Raley, Stern and Brown were convicted of violating the provisions of subdivision 3 of Section 12137, they have no interest in and cannot question the constitutionality of the power given the commission with regard to those parts of the statute which have nothing whatsoever to do with their convictions, regardless of whether certain of the acts which “may be punished as for a contempt” under this section and .which are admittedly contempts of court could also be construed contempts :of a legislative body, or made so by legislative' enactment.
“•* # * a defendant charged with the violation of a statute, but not charged with any act coming under a certain severable section of the statute, is without the interest necessary to question'the validity of that section.” 11 American Jurisprudence, 755, Constitutional Law, Section 111. See, also; State v. Hill, 168 La., 761, 123 So., 317, 69 A. L. R., 574.
The offense set out in the “severable section” of Section 12137, of which defendants were found guilty, is the refusal to answer as a witness when lawfully required to do so. The power of the General Assembly to label such refusal an offense when committed before a duly constituted legislative body and to authorize such body to cause proceedings to be instituted in a court of law for the punishment of such refusal to answer arises directly from the provisions of Section 8, Article II of the Constitution of Ohio, and not from other constitutional powers" by virtue of which the General Assembly enacts legislation pertaining to courts of law.
It is seen that, regardless of the existence of Sections 12137 to 12146, General Code (Sections 2705.02 to 2705.09, Revised Code), the General Assembly could enact statutes, applying solely to legislative bodies, providing that a failure to obey a subpoena duly served or a refusal to be sworn or to answer as a witness when lawfully required to do so would constitute an offense punishable by a court of law, and could prescribe the punishment which would follow a conviction for violating such statutes, which could be similar to if not in the exact terms as *555 the punishment prescribed in Sections 12142 and 12143, General Code (Sections 2705.05 and 2705.06, Revised Code), which are the statutes under which sentences were or could have been imposed in the instant cases. Such statutes, in the absence of other defects, would be constitutional exercises of the power given the General Assembly by Section 8, Article II, supra.
In this instance it is seen that the General Assembly merely exercised the power given it by Section 8, Article II, in making by reference that which is admittedly a statutory offense with regard to the judiciary a statutory offense with regard to this body of the General Assembly, by including, by reference, the offense described in subdivision 3 of Section 12137, General Code (Section 2705.02 [C], Revised Code), in Section 76-32, General Code (Section 103.35, Revised Code).
The General Assembly having the power to define the offense has the power to prescribe the punishment therefor and the procedure to be followed by its bodies in imposing such punishment, and this it has done in this instance in the same manner in which it chose to define the offense, i. e., by reference.
The fact that the procedure outlined provides for the institution of proceedings in a court of law under specific sections of the General Code certainly indicates an acquiescence to the judiciary rather than an attempted usurpation of its power.
Thus, the inclusion by reference in Section 76-32, General Code (Section 2705.02, Revised Code), of the Un-American Activities Commission sections, of paragraph 3 of Section 12137, General Code (paragraph 3 of Section 2705.02, Revised Code), providing that one “may be punished as for a contempt” for the “refusal * * * to answer as a witness when lawfully required,” and Sections 12138 to 12146, General Code (Sections 2705.03 to 2705.09, Revised Code), of the Chapter on Contempt of Court, setting out the procedure to be used in proceedings , based upon such refusal and the punishment upon conviction therefor, is a valid exercise of the legislative power under Section 8, Article II of the Constitution, empowering the Legislature to compel the attendance and testimony of witnesses. Furthermore, it is clearly not a delegation of judicial power to -the Un-American Activities Commission but constitutes merely *556 a definition as to what shall constitute a contempt of such commission and a method of procedure by which proceedings may be instituted by the commission in a judicial tribunal for the punishment of the contempt.
For the reasons given in the Morgan appeal, the defendants were lawfully required to answer the questions set out in the indictments, and their refusal to answer on the ground of self-incrimination constituted violations of paragraph 3 of Section 12137, General Code, which, by virtue of-Section 76-32, General Code, applies to refusal to answer when lawfully required by the Ohio Un-American Activities Commission.
It follows from what has been said that the judgment of the Court of Appeals for Franklin County in cause No. 34311, affirming the judgment of the trial court which dismissed certain counts of the indictment for repetition and impertinency and found appellant guilty upon the remaining counts, should be, and it hereby is, affirmed; and that the judgment of the Court of Appeals for Hamilton County in cause No. 34361 should be, and it hereby is, affirmed.

Judgments affirmed.

Weygandt, C. J., Zimmerman and Bell, JJ., concur.
Hart and Taft, JJ., dissent.
Stewart, J., dissents in part.